BESSIE M. HOLLY, PETITIONER-APPELLANT, v. SANFORD
BATES, COMMISSIONER, DEPARTMENT OF INSTITU-
TIONS AND AGENCIES, RESPONDENT-RESPONDENT.

Argued April 30, 1951—Decided May 21, 1951.

*Mr. Arthur J. Sills* argued the cause for the appellant (*Messrs. Wilentz, Goldman, Spitzer & Sills,* attorneys).

*Mr. Joseph A. Murphy,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney; *Mr. Eugene R. Urbaniak,* Deputy Attorney-General, on the brief).

The opinion of the court was delivered by

BURLING, J. This appeal brings before us for determination a decision and order of the Commissioner of the Department of Institutions and Agencies of this State (hereinafter referred to as the Commissioner), effecting denial of the application of the petitioner-appellant, Bessie M. Holly (hereinafter referred to as the petitioner), for a license to operate a nursing home. The appeal was taken to the Appellate Division of the Superior Court pursuant to *Rule* 3:81–8, and while pending there was certified to this court upon our own motion.

The petitioner made oral application in March, 1949, to the Department of Institutions and Agencies of this State (hereinafter referred to as the Department) for a license to permit her to operate a nursing home at 668 West Crescent Avenue, Allendale, New Jersey, and in the same month submitted to the Department, letters of recommendation in connection with her application. On April 26, 1949, she submitted to the Department a written application for such a license.

By notice of denial, dated July 18. 1950, the Commissioner informed the petitioner that her application for license was denied for the following reasons:

"1. That on or about July 29, 1948, you were charged with practicing medicine without a license and as a result thereof made voluntary payment of a money penalty to the State of New Jersey.

2. Further that on or about March 31, 1949, in the County of Rockland, New York, you entered a plea of guilty to a charge of illegal practice of medicine and were required to pay a fine of $250."

The petitioner appealed this denial of license by letter dated July 28, 1950, and the Commissioner arranged for a hearing of the matter pursuant to the authority vested in him by *R. S.* 30:11–3, as amended by *L.* 1947, *c.* 340, *p.* 1093, *sec.* 3. The hearing was held on October 6, 1950, before the Commissioner and a member of the Hospital Licensing Board of New Jersey. No question is raised concerning the validity of this procedure. At this hearing the petitioner admitted that she had pleaded guilty to a charge of illegal practice of medicine in the State of New York on March 31, 1947 (stated in the notice of denial, *supra*, as March 31, 1949) and had paid a fine of $250 as a consequence thereof. She also admitted that on or about July 29, 1948, she had been served with a complaint charging that she had practiced medicine without a license in the State of New Jersey, and, further, that she had made a payment of $150 to the State of New Jersey in settlement of the claim for the statutory penalty exhibited in the complaint, and subsequently said complaint was dismissed by the New Jersey State Board of Medical Examiners, the plaintiff therein. An attempt was made by the petitioner to introduce evidence to show the circumstances upon which the New York and New Jersey charges of unauthorized practice of medicine respectively were made. This offer was refused by the Commissioner.

Upon the conclusion of the hearing, the Commissioner on November 6, 1950, filed his decision and order stating, *inter alia*:

"The law further requires the applicant to furnish evidence of her ability to comply with minimum standards of nursing and hospital care and to demonstrate that she has financial ability to operate the institution and is of good moral character.

It is the determination of the Hospital Licensing Board and of this department that the applicant has failed to meet the test of

the law and is, therefore, not entitled to the privilege of a license to operate a nursing home."

\* \* \*

"The appellant's application for license to operate a nursing home is, therefore, denied, \* \* \*."

It is from this decision and order of November 6, 1950, that this appeal is taken.

██ The proceedings of the administrative agency of the State here appealed from were *quasi*-judicial in nature. Where there is proof to support the conclusion of the administrative board the appellate court will not substitute its own judgment for that of the board, *Lakewood Express Serv. v. Board of Public Utility Commissioners*, 1 *N. J.* 45, 51–52 (1948) provided that proof consists of substantial competent and relevant evidence. The Commissioner sufficiently stated his "conclusions and reasons therefor" under the statute here involved. *R. S.* 30:11–3, as amended by *L.* 1947, *c.* 340, § 3, *supra*. We shall allude to the evidence after discussing the adjective question involved.

██ On this appeal the question is raised whether the Commissioner erroneously excluded the petitioner's offered evidence concerning the circumstances surrounding the aforementioned criminal conviction in New York and the settlement of a suit for a statutory penalty in New Jersey by payment of the penalty, both of which actions were admittedly prosecuted against her for violation of laws relating to the unauthorized practice of medicine. We find no error. We are pressed with the argument that our decision should be controlled by the decision of the former Court of Errors and Appeals in *Schireson v. State Board of Medical Examiners*, 130 *N. J. L.* 570 (*E. & A.* 1943). In that case the defendant had entered a plea of *nolo contendere* to charges asserted against him in a criminal proceeding and on the later review of a revocation of his license to practice medicine, the appellate court held that his plea in the criminal proceeding had reserved to him the right to contest the issue in a collateral civil proceeding. That is not the situation here. The petitioner admittedly pleaded guilty to the charge of illegal

practice of medicine in the New York proceeding and thus foreclosed any right she may have had to contest the issues there involved in any subsequent civil proceeding. It is suggested that a similar disposition may not be made of the related question of the suit for penalty in New Jersey. Although there is some contrariety of opinion concerning the character of proceedings to impose a penalty under chapter 9 of Title 45 of the Revised Statutes, see *State Board of Medical Examiners v. Coleman,* 132 *N. J. L.* 64, 66, (*Sup. Ct.* 1944) and cases there cited, there is no necessity to reach a decision thereon in the instant appeal. The Legislature has seen fit to enact into law in this State a provision that payment of a penalty or any part thereof for an alleged violation of the statutes regulating the practice of medicine (*viz.,* chapter 9 of Title 45 of the Revised Statutes, *supra*) either before or after institution of proceedings for the collection thereof, shall be deemed equivalent to a conviction of the violation for which such penalty was claimed. *L.* 1944, *c.* 166, *p.* 609, § 3 (*N. J. S. A.* 45:9–27.4).

The course taken by the petitioner in the proceedings for recovery of the statutory penalty was not the passive step taken when one pleads *nolo contendere* or *non vult* to a criminal indictment, but was an active and voluntary move by her to obtain dismissal of the action, a move which resulted in her "conviction" by admission of guilt, under *L.* 1944, *c.* 166, § 3 (*N. J. S. A.* 45:9–27.4), *supra.* She thereby effectually foreclosed her right to further contest the issues of fact which were the basis of the complaint by the New Jersey State Board of Medical Examiners.

We now move to the Commissioner's decision and order of November 6, 1950, to determine whether the conclusions therein were sufficient and whether such findings are based on substantial, competent and relevant evidence. *R. S.* 30:11–1, as amended by *L.* 1947, *c.* 340, § 1, requires the applicant for a license for a nursing home to furnish evidence of ability to comply with minimum standards of nursing care, of financial ability to successfully operate the institution for which the

license is sought and of the good moral character of the person in charge thereof. The Commissioner found that the petitioner "failed to meet the test of the law" and that she was not "a fit and proper person to be entrusted with the care and treatment of the sick and ailing which might be admitted to a nursing home under her supervision." The evidence in the record was insufficient to enable the Commissioner to authorize a license for the petitioner.

The evidence shows that the petitioner in a short span of time twice violated laws relating to the unauthorized practice of medicine. Any person who thus indicates that he or she is inclined to exercise the prerogatives of a physician when not entitled to exercise these prerogatives, is not so constituted morally as to be entitled to be entrusted with the management of a nursing home and the care of the sick and feeble who may require attention there. A clear declaration of public policy is made in the statute, *R. S.* 30:11–1, as amended by *L.* 1947, *c.* 340, *p.* 1091, § 1, namely:

"It is declared to be the public policy of this State to provide for the development, establishment and enforcement of basic standards for the care and treatment of individuals in private nursing homes and private hospitals and for the construction, maintenance and operation of such hospitals in such a manner as to insure safe and adequate treatment of all such individuals in said private nursing homes and private hospitals. No private nursing home or private hospital for the care, treatment or nursing of persons ill with disease, or who are crippled, infirm or in any way afflicted, shall operate within this State except upon license first had and obtained for that purpose from the department, upon application made therefor as hereinafter provided. No such license shall be granted by the department, unless the commissioner shall be satisfied that the institution in question is adequately prepared to furnish the care and service to be provided by it."

From the state of the record of the proceedings below it appears that the petitioner had assumed that the hearing held on October 6, 1950, resulting in the order of November 6, 1950, subject of her appeal, was directed solely to the question of her moral qualifications for the license and had placed emphasis on that subject. The burden of proof rested

upon her to show compliance with all the factors required by the statute, namely, proof of financial ability, ability to maintain minimum standards of nursing as well as good moral character. This she failed to do. The Commissioner must be satisfied that the applicant is adequately prepared to furnish the care and service to be provided by it. *R. S.* 30:11–1, as amended by *L.* 1947, *c.* 340, § 1, *supra.* The denial of the petitioner's application for a license to operate a nursing home was proper and was not tainted with whim or caprice, or abuse of discretion.

For the reasons above stated the decision and order of the respondent is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.