49 N.J. Super. 309 (1958)
139 A.2d 761
MARIE S. ROTH, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES RETIREMENT SYSTEM OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1958.
Decided March 17, 1958.
*312 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. William E. O'Connor, Jr., argued the cause for plaintiff-appellant (Messrs. Camp & Simmons, attorneys; Mr. Roy G. Simmons, of counsel).
Mr. David D. Furman, Deputy Attorney-General argued the cause for defendant-respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
This is an appeal from a determination by the defendant Board of Trustees, Public Employees Retirement System of New Jersey, denying accidental death benefits under N.J.S.A. 43:15A-6 et seq. to Marie S. Roth, appellant and widow of decedent Edward Harold Roth.
The applicable statute (N.J.S.A. 43:15A-49) is as follows:
"Upon the death of a member in active service as a result of an accident arising out of and in the course of his employment and not as the result of his willful negligence, an accident death benefit shall be payable, if a report, in a form acceptable to the Board of Trustees, of the accident is filed in the office of the retirement system within 60 days next following the accident, but the board of trustees may waive such time limit, for a reasonable period, if in the judgment of the board the circumstances warrant such action. Evidence must be submitted to the board of trustees proving that the natural and proximate cause of his death was an accident arising out of and in the course of employment at some definite time and place.

* * * * * * * *
"No such application shall be valid or acted upon unless it is filed in the office of the retirement system within 2 years of the date of the accident; but the retirement board may waive such time limit, for a reasonable period, if in the judgment of the board the circumstances warrant such action."
On February 18, 1955 decedent, an employee of the Department of Conservation and Economic Development and *313 a member of the defendant system, was performing his work at the Rockport Game Farm in Hackettstown, New Jersey. He was removing shingles from the roof of a corn crib. To accomplish this work he was standing on a bale of wire inside the corn crib and striking the shingles with a "2 x 4." While so engaged the "2 x 4" struck a rafter or beam identified as a "nailer" which apparently failed to yield to the force of the blow. As a result his arm and shoulder suffered a trauma resulting from the force used in striking the unyielding rafter. He "turned white," "hollered," jumped from the bale of wire and "grabbed" his right arm and shoulder with his left hand. He did not work the remainder of the day or the following day. He complained of "a lot of pain" to a co-worker during the day of the accident who testified that he observed that decedent's right arm was red from the wrist to a point above the elbow where further view of the upper arm was prevented by decedent's rolled-up shirt sleeve.
Decedent apparently did not consider the injury significant as to any serious permanent result and failed to report the accident to the office of the retirement system within the statutory 60-day period. He told the Superintendent of Wild Life Management about the accident on March 9, 1955 and from time to time between March 9, 1955 and December 12, 1956 complained to the superintendent of soreness in his right arm. As a matter of fact, a formal report of the happening of the accident was not filed until December 12, 1956, the date of decedent's death, and then by the aforesaid superintendent. A superior of the superintendent was also told of the accident in March 1955, but made no formal report of it.
Decedent's arm continued to be painful, however, and commencing approximately six months after the happening of the accident he consulted successively over a substantial period of time, a medical doctor, an osteopathic physician (at which time his arm was badly swollen), and a chiropractor, all of whom apparently considered that decedent was suffering from bursitis and treated him therefor. Still *314 later he consulted another medical doctor who tentatively diagnosed the condition as Paget's disease but, believing that there might be a malignancy present, recommended further study. X-ray and laboratory studies followed. In November 1956 he was hospitalized, at which time it was ascertained that he was suffering from a sarcoma of the right humerus. He underwent radical surgery. His right arm, shoulder blade and collarbone were removed. He died 12 days thereafter, December 12, 1956.
The principal issue presented by this appeal is a challenge of the propriety of defendant's determination that plaintiff failed to sustain the burden of proof with respect to the accident on February 18, 1955 and its claimed causal connection with the death of decedent. There can be no doubt that Roth was injured February 18, 1955 in a work-connected accident. The basic inquiry was whether decedent's death from sarcoma almost 22 months thereafter was causally related to the injury sustained as aforesaid.
Appellant contends that the statute is remedial and that, in considering whether compensation should be paid for an injury or death of an employee who sustained an accident in the course of his employment, reliance should be placed on comparable decisions under the Workmen's Compensation Act; that this Court, in its examination of the evidence before the administrative tribunal, should not be confined to a determination of the question whether substantial evidence existed for the Board's finding.
Respondent, in support of its order denying death benefits, urges that a presumption of reasonableness attaches to an administrative body's actions and that this court should be confined in its inquiry to ascertaining whether the evidence before the Board furnished a reasonable basis for its action, citing among other cases: Holly v. Bates, 7 N.J. 191 (1951); Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501 (App. Div. 1956); In re Sanders, 40 N.J. Super. 477 (App. Div. 1956); In re West Jersey & Seashore R.R. Co., 46 N.J. Super. 543 (App. Div. 1957); Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. *315 488, 508 (1957); Borough of East Paterson v. Civil Service Dept. of N.J., 47 N.J. Super. 55 (App. Div. 1957).
These cases reflect many types of administrative action. Involved in the Elizabeth Federal Savings & Loan Ass'n case, supra, was the review of the determination of the Commissioner of Banking and Insurance granting permission to a savings and loan association to establish a branch office. In the Holly case, supra, the conclusion of the Department of Institutions and Agencies in the matter of an application for a license to operate a nursing home was challenged on appeal. In re Sanders, supra, the propriety of the action of the Division of Taxation in suspending a distributor's cigarette license was the subject of inquiry. The Hornauer case, supra, involved the review of the determination of the Director of the Division of Alcoholic Beverage Control suspending appellants' liquor licenses upon finding appellants guilty of the sale of alcoholic beverages to a minor. In re West Jersey & Seashore R.R. Co., supra, the action of the Board of Public Utility Commissioners denying approval of proposed sale of certain realty by the railroad company, was the subject of appeal. The appellant in the Borough of East Paterson case, supra, challenged the action of the Civil Service Commission in modifying a penalty in a proceeding to review dismissal of a police officer.
In the cited cases the limitations on the scope of the appellate court's review were expressed in a variety of ways, but with one central theme. Illustrative is the opinion of Judge Jayne in the Sanders case, supra, where he said: "[the] appellate function is characteristically remedial of some manifest abuse of the Director's powers. We cannot optionally supersede either the exercise of the supervisory licensing authority entrusted to him by the Legislature or arbitrarily overturn his bona fide discretionary determinations. * * * that a mere difference of opinion concerning the evidential persuasiveness of relevant testimony does not enable us to substitute our judgment for that of the duly constituted administrative agency although the decision was rendered by the latter in performance of a so-called quasi-judicial *316 proceeding." In the West Jersey & Seashore R.R. Co. case. supra, Judge Hughes in his opinion expressed the limitation in the following manner: "* * * the court does not substitute its independent judgment for that of the Board, but seeks to determine whether the evidence before that body furnished a reasonable basis for its action, * * *."
It is recognized, however, that the courts "in the exercise of their judicial power are permitted to review the ultimate application of the law which has been entrusted to the administrative officer." Elizabeth Federal Savings & Loan Ass'n case, supra. Moreover, it should be further noted that even within the framework of this restrictive consideration by an appellate tribunal, the discretion delegated to the agencies involved in the cited cases is not unlimited. For instance, this court in a case involving an appeal from an affirmance by the Director of the Division of Alcoholic Beverage Control of the denial by a municipal body of an application for a transfer of a plenary retail consumption license, held that "* * * the courts must measure the propriety of the administrative action by the authority granted, and may not merely surrender the subject matter to the agencies on the premise that theirs is a discretion exercisable on the basis of any and all factors which pertain to the political issue of prohibition." Bivona v. Hock, 5 N.J. Super. 118 (App. Div. 1949).
With these limitations as a guide we turn to the procedure followed and the elements which guided the defendant in its denial of the plaintiff's claim. Defendant, in a letter dated February 26, 1957 signed by its secretary and addressed to plaintiff's counsel, initially expressed itself as follows:
"* * * Since several of our board members expressed doubt regarding the cause of Mr. Roth's death and since your letter and the information contained therein did not, in their opinion, prove conclusively that Mr. Roth's death was due to the accident which occurred two years earlier, they had no alternative but to deny Mrs. Roth's application for an accidental death benefit.
*317 This does not preclude, however, your right to ask the Board to grant you and Mrs. Roth a hearing in this matter. * * *" (Emphasis supplied.)
As a result of the permitted hearing, defendant determined that the "claimant has not established to the satisfaction of the board, that Mr. Roth's death was the result of an accident arising out of and in the course of his employment." (Emphasis supplied.)
Initially we hold that, in view of the remedial nature of the act and the resultant liberal interpretation to be applied to it, the word "proving" in the sentence in the applicable statute, viz.: "Evidence must be submitted to the board of trustees proving that the natural and proximate cause of his death was an accident arising out of and in the course of employment at some definite time and place" (emphasis supplied), requires the existence of probability rather than certainty. If "under the evidence the tendered hypothesis becomes a rational inference based upon a preponderance of probabilities, the burden of proof is sustained." Mergel v. New Jersey Conveyors Corp., 14 N.J. 609 (1954). We hold that the evidence clearly established that the trauma sustained by decedent affected adversely the previously diseased right humerus; that he was then suffering from Paget's disease; that the injury activated and aggravated that condition and was a contributing cause in the development of the cancer which caused his death. The apparent insignificance of the accident and the time that intervened between its occurrence and the diagnosis of decedent's ultimate condition were controlling factors in defendant's determination that the plaintiff should be denied recovery. These factors were, however, completely resolved by the evidence.
Dr. Raymond O. Stein, a specialist in orthopedic surgery, who at present is Chief of Orthopedic Surgery at Doctors Hospital and who had many years of experience with reference to the treatment of metabolic diseases of the bone of which Paget's disease is one, testified on behalf of plaintiff. In describing the X-ray pictures which had been taken of *318 Mr. Roth, Dr. Stein testified that he determined definitely from the condition of the bone under scrutiny that Paget's disease had been present for several years and had preexisted the accident, that alkaline phosphatase was definitely elevated in the osteoblastic phase of Paget's disease. He testified further that Paget's disease represents a pre-cancerous or pre-sarcomatous condition and that it was his definite conclusion that "the trauma was a contributing cause to the development of a spindle cell sarcoma arising out of the area of Paget's disease."
Dr. Milton Fridman who had spent the last 29 years of his medical practice specializing in cancer research, diagnosis and treatment of cancer, with special reference to X-rays, radium, radioactive isotopes and atomic energy, and who is currently the chief attending physician in radiation therapy of cancer at Bellevue Hospital and New York University Hospital, testified on behalf of plaintiff. He stated that he had viewed over 300 cases of Paget's disease and had personally experienced many cases of sarcoma arising in Paget's disease. He gave it as his definite conclusion that Mr. Roth's right shoulder was the seat of Paget's disease; that the disease had been operative for several years; that the disease was progressing slowly although it was causing no pain; that immediately prior to the accident there existed pre-sarcomatous or early sarcomatous changes in the upper end of the right humerus which had weakened and rendered it vulnerable to injury; that the accident entailed the delivery of a heavy, forceful trauma pulling on the entire right upper extremity; that the portion of the right extremity that was injured and produced symptoms was the head of the humerus; that the force caused a tearing of some of the normal tissues as well as the sarcomatous tissues, probably rupturing blood vessels and opening tissue spaces between the cancer cells; that subsequently a highly malignant sarcoma appeared which grew speedily and progressively and spread to many areas of Mr. Roth's body and caused his death. He gave it as his definite opinion that the accident was a competent factor causing accelerated *319 growth and dissemination of the cancer resulting in Mr. Roth's death.
Dr. Alan O. Whipple, a surgeon of many years experience and who had been Director of Surgical Service at Presbyterian Hospital for 25 years and who retired in 1950, testified on behalf of the Board. He stated that in his opinion it was unusual for a sarcoma allegedly related to an accident to have developed at a time as far removed from the date of the accident as was the fact in the instant case. However, he testified that he could not "rule out" the connection between trauma and cancer in the instant case, even though he expressed the view that the connection was not in his opinion probable. He further stated that in his opinion the X-rays did not justify the conclusion that Paget's disease was present in the bone.
The respondent contended by brief and oral argument before this court that a proper construction of N.J.S.A. 43:15A-49 "may rule out the payment of death benefits upon the aggravation of a preexisting condition which would have necessarily resulted in death although possible at a later date." We hold to the contrary. We believe that this statute should be construed liberally and on the issue of causal connection between the happening of an accident and death the principles governing the application of the Workmen's Compensation Act should control; that the defendant, in assessing the proofs in this case should have been guided by the principles enumerated by cases such as Green v. Simpson & Brown Construction Co., 14 N.J. 66, 69 (1953); Jochim v. Montrose Chemical Co., 3 N.J. 5 (1949); Mergel v. New Jersey Conveyors Corp., supra. Under the Workmen's Compensation Act "the law is settled that if an accident combines with a latent condition to give rise to a disability, it is to be taken as one of the contributory causes of the disability, satisfying the statutory requirement of causality." Mewes v. Union Bldg. & Construction Co., 45 N.J. Super. 88, 92 (App. Div. 1957). We hold that plaintiff is entitled to the application of a similar concept under the statute here applicable. As *320 was said in the case of Panchak v. Simmons Co., 15 N.J. 13, 16 (1954), in speaking of the requisite notice to an employer under the Workmen's Compensation Act, "Its construction and application must, however, be in the full light of the goals of the humane social legislation of which it is part." Such concept in our opinion is equally applicable to the case at bar.
Defendant had determined also that plaintiff should be denied recovery because of decedent's failure to report the happening of the accident within the statutory period of 60 days and had refused to waive the statutory 60-day period (N.J.S.A. 43:15A-49). In this court the Board urges the propriety of its refusal contending that it was a discretionary matter and in its brief asserts that "there were no justifying circumstances for the waiver of the requirement of filing an accident report."
Decedent's obvious ignorance of the effect of the accident, his lack of knowledge of the condition from which he was suffering, the fact that nearly 21 months elapsed before his ultimate condition was diagnosed afford not only just bases for relaxing and waiving the 60-day limitation but are of sufficient force to compel the waiver of the requirement in the interest of justice.
Decedent's good faith was not questioned. His record as a conscientious worker is unchallenged. Although in pain, he worked day after day until the progressive disease forced him to be hospitalized. It is evident that he had no concept of the prospect that the dire results referred to would develop. Again stressing the remedial nature of the statute, we feel that the Board of Trustees erred in adhering to the 60-day period and in refusing to waive the time limitation for the filing of a report. No standards are provided in the specific section of the controlling statute for the Board's guidance in the exercise of its discretion. An examination of the pension statute in its entirety however disclosed that under N.J.S.A. 43:15A-43 authorizing accident disability retirement upon the filing of an accident report within 60 days, the Board may grant a waiver if *321 there be present "mistake, inadvertence, ignorance of fact or law, inability, or to the fraud, misrepresentation or deceit of any person, or to a delay in the manifestation of the incapacity, or to any other reasonable cause or excuse."
The words in N.J.S.A. 43:15A-49, "* * * if in the judgment of the board the circumstances warrant such action," in our opinion require the application of similar standards.
In refusing to waive the 60-day statutory requirement the Board also referred to a fact dehors the record. Its determination includes the following:
"The retirement system file indicates that on July 17, 1956, the decedent, Edward Harold Roth, suffered an accident wherein bits of wood from an electric drill became embedded in his left eye while he was employed at Rockport Farm. Although he did not lose any time at work, a report of this accident was filed with the retirement system on July 24, 1956 indicating that at that time, Mr. Roth and his employer were aware that a report of an accident should be filed promptly. This being so, it negates an inference that Mr. Roth did not know that a report of an accident should be filed promptly.

* * * * * * * *
No report of the accident was made within the time prescribed by the statute and the board is not satisfied that a reasonable explanation has been given for the failure to make such report. The Board further feels that both decedent and his employer knew of the requirement that a report of the accident should be filed within 60 days following the occurrence of the accident. Therefore, the Board determines that in its judgment, the circumstances do not warrant the waiver of the time limit within which a report must be filed."
On this appeal the defendant-respondent takes the position that the fact that it went outside the record in this case in its refusal to waive the 60-day notice was merely incidental and not necessary to the Board's determination; that its conclusion "was not marred by the reference to another accident report." The fact remains that the Board stressed the information gleaned from its file as above noted and its order, after reciting all of the facts as it found them to exist, including the material outside of the record, concludes with the statement: "For the above reasons, the *322 original action of the Board denying the claim for accident death benefit allowance is hereby affirmed."
We hold that the defendant's refusal to waive the provision requiring the report within 60 days was, under all of the attendant circumstances, erroneous and constituted an abuse of discretion. The determination by the defendant denying plaintiff's claim for the payment of accidental death benefits is reversed.