80 N.J. Super. 541 (1963)
194 A.2d 363
MARIO D. FATTORE, APPELLANT,
v.
POLICE AND FIREMEN'S RETIREMENT SYSTEM OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1963.
Decided October 17, 1963.
*543 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Milton Prigoff argued the cause for appellant (Messrs. Lebson & Prigoff, attorneys; Mr. Abram A. Lebson, of counsel).
Mr. Thomas C. McGrath, Jr., Law Assistant, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This appeal brings into issue the justification for a determination by the Police and Firemen's Retirement System of New Jersey denying the application of Mario D. Fattore, member of the Fire Department of the City of Camden, for an accidental disability retirement allowance based upon a heart attack sustained while performing his duties as fireman.
The right to such an allowance in favor of a member of the Retirement System (Fattore concededly was such a member) under the statute, N.J.S.A. 43:16A-7, depends, insofar as the issues here are concerned, upon whether the "natural and proximate cause of such disability was an accident met in the actual performance of duty * * * and that such member is mentally or physically incapacitated for performance of * * * duty * * * and that such incapacity is likely to be permanent." The administration of the act creating the Retirement System is committed to a board of trustees. N.J.S.A. 43:16A-13(2). Under that section, paragraph (12), the board of trustees designates a medical board composed of physicians which arranges for and passes upon all medical examinations called for in connection with an application for a disability retirement and reports thereon in writing to the *544 board of trustees its conclusions and recommendations on matters referred to it. "If required, other physicians may be employed to report on special cases." Ibid.
The applicant's proofs at the hearing before the board of trustees showed the following. On February 18, 1960 Fattore, a fireman of 13 years' standing, reported for duty at 8 A.M. at the premises of his engine company in Camden and was assigned with three other men to replace hose on a pumper apparatus. He had never before had a heart attack or heart trouble. Six men were formerly assigned to do this work. Only three men, including Fattore, were working at the pumper itself. The 1,500 to 2,000 feet of hose was customarily changed every month to prevent mildewing. Fattore's job was to sit in the vehicle and pull up and fold lengths of hose handed him by the other men. Each 50-foot section of the hose weighed about 75 pounds. Since three sections of hose were generally coupled together, Fattore was hauling lengths of 150 feet weighing 225 pounds. Fattore testified that he "was squatted in the body of the truck, and as the hose was handed to me, I had to lug and pull the hose to get it up there while I'm folding it." He stated that at about 10:30 A.M., while doing this work, he felt a pain in the upper part of his chest, which went across to the shoulder and down into the left arm. He was perspiring greatly and his face was flushed. He continued working for a while, but the pain became worse, "it was unbearable," and it was necessary for the other two men to remove him from the apparatus. He also testified that he was helped upstairs and remained in bed until the end of the working day.
One of the other men on the work assignment testified the job then being done by Fattore was "very strenuous * * *. You don't know how strenuous it is until you have to do it."
The next day, on February 19, 1960, Fattore visited his personal physician, Dr. Principato, who had him immediately hospitalized. He remained in the hospital until March 19, 1960. He returned to work (light duty) on February 16, 1961, but because slight exercise caused precordial distress he *545 stopped work on June 1, 1961 on the recommendation of Dr. Principato. Since that time Fattore has not been able to work. Dr. Principato issued a certificate May 11, 1961 diagnosing his condition as an acute myocardial infarction due to atherosclerotic heart disease and coronary arteriosclerosis.
On April 27, 1961 Fattore applied to the Retirement System for an accidental disability retirement allowance. The medical board, to whom the matter was referred, never examined the applicant, but on July 13, 1961 submitted the following report to the board of trustees through its member, Dr. David Eckstein:
"Dear Mr. Baggaley:
The problem presented here does not lend itself to a simple solution. The panel concerned itself with two points; (1) we feel that there was arteriosclerotic coronary disease on the basis of the report of Doctor Principato, (2) a great deal was made of the fact that four men were doing the work of six. We were of the unanimous opinion that the physical stress involved in this work was not more than that anticipated in a normal course of a fireman's routine. In other words, we do not feel that the effort of handling hose was sufficient to precipitate the heart insufficiency.
We believe that the man is totally disabled for any type of work in the fire-department, but we do not believe that this should be interpreted as an accidental disability.
 Yours truly,
 DAVID ECKSTEIN, M.D."
Later the medical board referred Fattore's claim to a cardiologist, Dr. Crist, who examined him March 13, 1962 and filed a written report with the board stating the history of the original pain as occurring during the work episode and a diagnosis as follows:
"DIAGNOSIS:
1. Organic heart disease  etiology  arteriosclerosis, anatomical  right bundle branch block, old inferior infarction  healed, physiological  sinus rhythm, coronary insufficiency, functional  class II to III.
NATURE OF DISABILITY: Review of the chart of the above hospitalization, including the history, serial electrocardiograms and *546 laboratory work, substantiates the diagnosis of myocardial infarction, acute, with right bundle branch block.
PRESENT DEGREE OF DISABILITY: Objectively his heart is perfectly normal in size. Blood pressure is normal. There is no evidence of decompensation, however, the right bundle branch block is still present in the electrocardiogram. Subjectively he states he has angina on slightest of exertion and has symptoms of myocardial embarrassment. While these subjective symptoms could be on the basis of cardiac neurosis subsequent to his heart attack, there is no way to prove that he does not have these symptoms. Certainly with the electrocardiographic evidence of right bundle branch block he should never return to work as a fireman. This disability is permanent."
The same report, under the heading "Causal Relationship," states:
"If Mr. Fattore's claim that his original pain occurred while he was changing the hose at the fire station can be substantiated, there can be no question about the cause and relationship [sic] of his condition."
By stipulation at the hearing the applicant was permitted to submit his expert medical proofs in the form of the May 11, 1961 certificate of Dr. Principato, a subsequent certificate by Dr. Principato that the work of loading the hose "was a contributory and aggravating factor in precipitating Mr. Fattore's myocardial infarction," the report of Dr. Crist, and a written report by Dr. Summerill, Camden Police and Fire Surgeon, dated May 20, 1961, made after examination of the subject, which concludes: "This is a definite coronary infarction and resultant coronary insufficiency." No opinion however is expressed therein as to causal relationship between the work episode and the heart attack.
The respondent's medical proof at the hearing consisted solely of the testimony of Dr. Eckstein, who, as already mentioned, never examined Fattore. The doctor described himself as an internist, but not a cardiologist. The most significant portion of the explanation he gave for his conclusion that there was no causal relation between the work episode and the heart attack and subsequent disability was *547 that Fattore was at the time of the attack doing what he was accustomed to doing. "* * * [T]he man who is accustomed to doing heavy work every day of his life and is doing that heavy work, we don't feel that this can be pinned down as the causative element. And this, of course, is fundamental in our thinking * * *."
The doctor's opinion was that the attack and subsequent disability were solely due to Fattore's previously existent arteriosclerotic condition. On cross-examination, however, when asked, "Is there any probability in your opinion that Fattore's job, doing what he did that day, loading the hose as he was, could have caused the attack or accelerated a dormant or a passive pre-existing condition of which he had no knowledge?," his answer was "Yes." Later, he qualified his view to say that it was "possible," but not "probable" that there was causal relationship. Further, his view was that the myocardial infarction had healed and that Fattore's present disability was due exclusively to the pre-existing arteriosclerosis, not the infarction. On further cross-examination, the doctor said: "Our feeling was * * * that this was part of the anticipated activities with possibly a little added stress, but we didn't feel there was sufficient change or difference to account for this episode, to have this stress to be exclusively the cause of the episode." (Emphasis added)
The formal "Determination" of the board of trustees discussed the evidence relating to the replacing of the hose and reflected adversely on the credibility of some aspects of the applicant's proofs concerning the happening of the occurrence in question. But the board avoided a flat finding that the episode did not take place. The board then proceeded to give "great weight" to the report of the medical board and the implementing testimony of Dr. Eckstein, and ruled that Fattore had not "sustained his burden of proof that the natural and proximate cause of his disability was an accident in the actual performance of duty," within the meaning of the statute.

*548 I.
We take up first the respondent's argument that the appeal must fail, without regard to any other consideration, for the asserted reason that the statute makes it an absolute condition of allowance of the accidental disability retirement that the medical board certify the existence of the statutory criteria specified in N.J.S.A. 43:16A-7 quoted above. While it is true that the cited section, taken alone, would seem literally to support the argument, that section must be read with N.J.S.A. 43:16A-8, which calls for reference of a claim for disability retirement allowance to the medical board and states that the report of the board "shall be considered by the board of trustees in acting upon such application." (Emphasis added) Of further relevance to the contention is the provision, noted above, in N.J.S.A. 43:16A-13(12), that the medical board shall report "its conclusions and recommendations" to the board of trustees. Acceptance of the argument of respondent would make the medical board the conclusive determinator of the allowability of the disability retirement, with the board of trustees constituting a mere rubber stamp for the promulgation of the decision of the medical board. The comprehensive statutory scheme is clearly otherwise. The various sections of the statute must be read together. Doing so, it is clear that it is intended that the board of trustees should make the determination for itself as a quasi-judicial body after giving consideration to the report of the medical board, but that it is not at all bound by it. The procedure followed in the hearing and decision of the present matter exemplifies the board's practical construction of the act to that effect.
Under any circumstances, it is totally unacceptable that this court should be precluded, as apparently is argued, from reviewing the legality and reasonableness of the final action of the administrative agency on the application for the disability retirement allowance, within the statutory criteria specified, by the mere fiat of the medical board against the *549 allowance. Such a thesis would create the impossible result that the determination of this agency would become immune from appellate review on the merits of the claim.
We thus proceed to consideration of the merits of the applicant's contention that the determination of the board of trustees was unreasonable and the result of a wrong conception of the meaning and effect of the statute.

II.
The board hints but does not actually decide that the postulated accidental episode, i.e., a heart attack while tugging the hose, did not in fact occur. We hold the testimony fairly calls for the conclusion that it did. The alleged discrepancies and inconsistencies in some of the proofs as to collateral matters do not derogate from the convincing purport of the evidence as a whole that Fattore sustained the heart attack in the very course of the strenuous work of pulling the hose onto the pumper.

III.
Of controlling effect in this case are the two prior decisions of this court in Roth v. Board of Trustees, etc., 49 N.J. Super. 309 (App. Div. 1958), and Kochen v. Consolidated Pol., etc., Pension Fund Comm., 71 N.J. Super. 463 (App. Div. 1962). In construing cognate public employee disability pension legislation, we held in these cases that such legislation was social in nature and purpose, should be liberally construed in favor of employees, and, specifically, that the principles of the Workmen's Compensation Act as construed should be applied in passing upon the issue of causal connection between the work effort and the alleged accidental injury. There is no reason why those decisions should not be held controlling here, the legislation in question being of the same general nature and purposes as that construed in the Roth and Kochen cases.
*550 Viewed from this perspective, it is clear that the attitude and approach of the medical board in the present case, upon which the board of trustees substantially relied for its determination, was erroneous. The essence of the position of the medical board and of its testimonial representative, Dr. Eckstein, was that the work incident could not be taken to be the natural and proximate cause of the heart attack and disability because the work Fattore was then doing was an effort of the type to which he was accustomed. Also stressed is the fact that he had a preexisting arteriosclerosis. This approach is the equivalent of the rule of "unusual strain," once accepted as a prerequisite criterion of compensable heart attacks, Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156 (Sup. Ct. 1946), affirmed o.b. 135 N.J.L. 352 (E. & A. 1947), but in effect discarded as incorrect in Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958). As most recently restated in Dwyer v. Ford Motor Co., 36 N.J. 487, at p. 493 (1962), the heart attack is compensable if the actual work effort (whether or not unusual for the workman) did in fact materially contribute to the precipitation, aggravation or acceleration of the heart attack, or of any pre-existing heart or circulatory disease, thereby culminating in an attack. The former presumption that a heart attack is the result of natural physiological causes is also rejected in that case (36 N.J., at pp. 506-507).
The difficulty of deciding the issue of causality in a particular case does not excuse the adjudicating tribunal from making the effort. The claim cannot automatically be rejected because the work effort was such as the worker was accustomed to, or because of the contribution to the attack of pre-existing disease, factors clearly constituting the ratio decidendi of the medical board and the adjudicating agency in this case.
Under other circumstances we might have remanded the case for factual redetermination by the agency on correct legal principles. But the clearness of Fattore's right to his accidental disability retirement allowance under the proofs *551 adduced and applicable principles of compensation law impel us to decide the matter with finality on this appeal. The respondent offered no proofs against the hypothesis of causality except the opinion of a physician who never examined the applicant or his hospital records, is not a cardiologist, and rested his opinion on a theoretical concept or rule of thumb which has been rejected by our decided cases. On the contrary, the hypothesis of causal relationship was expressly declared by Dr. Crist, the cardiologist who examined Fattore on reference by the medical board, subject only to establishment of the factual premise that the "original pain occurred while he was changing the hose." We have, as noted, decided that this fact has been established. Dr. Principato's opinion corroborates that of Dr. Crist. The predominance of the credible proofs sustains the conclusion in terms of probability that the work effort caused the heart attack.
Finally, there is nothing but Dr. Eckstein's ipse dixit to support his conclusion that Fattore's conceded present cardiac disability is due exclusively to the pre-existing arteriosclerosis, without any contribution by the allegedly "healed" myocardial infarction. Dr. Crist's report indicates that the March 1962 electrocardiogram still shows a right bundle branch block. Moreover, Dr. Eckstein does not persuasively show that a marked cardiac disability following directly after a myocardial infarction and right bundle branch block, and continuing thereafter to date, is now free from material causal contributive effect by that infarction and block merely because the electrocardiogram shows the infarction to be "healed." The contrary is indicated by Dr. Summerill's report describing the present coronary insufficiency as "resultant" from the coronary infarction.
Reversed, with directions to the board of trustees to grant the accidental disability retirement allowance.