109 N.J. Super. 449 (1970)
263 A.2d 789
EDWARD H. HILLMAN, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1970.
Decided April 6, 1970.
*450 Before Judges GOLDMANN, LEWIS and MATTHEWS.
*451 Mr. Owen B. Pearce argued the cause for appellant (Messrs. Pearce & Pearce, attorneys).
Mr. Philip I. Kagan, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Miss Rachel Leff, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Petitioner Hillman appealed, pursuant to R. 2:2-3(a) (2), formerly R.R. 4:88-8(a), from a final decision of the Board of Trustees of the Public Employees' Retirement System of New Jersey (Board) denying his application for an accidental disability pension under N.J.S.A. 43:15A-43. We remanded the matter so that the Board might hold a hearing and determine the factual issue as to whether Hillman's alleged disability was such that he qualified for the pension he sought.

I
Hillman was employed by the State Department of Transportation for almost 11 years as a maintenance man and was a member of the Public Employees' Retirement System. His health was apparently good and he worked regularly On March 15, 1967 he worked from 7:30 A.M. to 4 P.M. in the Brielle Circle Maintenance Yard, returned home, had supper, relaxed and then went to bed. At about 11 P.M. he received a telephone call from his superior telling him to report to work because of a snow emergency. Upon arrival at the Brielle yard he was assigned to operate a front-end loader, a piece of equipment he was not accustomed to operate in that its wheels were smaller and it was difficult to maneuver. The weather was cold, snowy and windy. At about 1:30 A.M., while clearing the snow, a part of the loader dropped into a hole and the steering wheel was wrenched *452 out of Hillman's hands. As a result of attempting to regain control of the wheel he experienced severe chest and arm pains, shortness of breath and inability to stand erect. He was taken to a hospital where he remained until discharged on March 23 with a diagnosis of "pulmonary edema, acute congestive heart failure due to arteriosclerotic heart disease." He never returned to work thereafter. All doctors who examined him concluded that he had suffered a serious heart attack and was unable to continue his usual employment.
On May 17, 1968 Hillman filed an application for accidental disability retirement pursuant to N.J.S.A. 43:15A-43, on forms promulgated by the Board. Attached was a report by his personal physician. Subsequently, after learning of the options available to him, Hillman on June 7, 1968 filed a revised application for accidental disability retirement, requesting retirement effective July 1, 1968. On June 20, 1968, and as required by the statute, he was examined by Dr. Barnett, the doctor designated by the Board, who issued his report to the Division of Pensions on July 9.
Hillman attained the age of 65 on July 12, 1968.
The medical panel of the Division of Pensions completed its evaluation form on July 30, 1968 and, on August 2, submitted its report to respondent Board. The report stated that Hillman had arteriosclerotic heart disease and hypertensive cardiovascular disease which had reduced him to a state of total incapacity. The panel was of the opinion that his condition was not based on an accidental disability but should be considered as an ordinary disability. The report stated that "There is no proven myocardial infarction present"  this in contrast to Dr. Barnett's report wherein he found "marked myocardial damage present * * * and an old healed inferior wall myocardial infarction."
The Board considered and denied Hillman's application at its September 10, 1968 meeting. Its reasons were given in the notice of final determination sent to Hillman on September 24:
*453 * * * Your application was denied on the basis that you are not disabled as the direct result of the traumatic event occurring on March 16, 1967, and that at the time of consideration by the Board of Trustees (September 10, 1968) you had passed your 65th birthdate.
The medical evidence did, however, substantiate that you are incapacitated for the performance of your duties; and, since you have passed your 60th birthdate, you were not eligible for Ordinary Disability Retirement and should therefore be retired on a Service Retirement allowance. Your retirement was approved on the basis of a Service Retirement effective as of July 1, 1968, without prejudice to appeal of the Board's action on your disability application. * * *
Hillman then retained counsel who formally requested a hearing on the merits. The Board met on October 15, 1968 and on October 24 informed counsel that the request was denied on the ground that the question of petitioner's disqualification for accidental disability retirement due to his age was a matter of law and thus properly reviewable by the Appellate Division. The Board construed N.J.S.A. 43:15A-43 as requiring it to look to the time when it acted on the application in determining if Hillman had not yet attained age 65, and not to the date of the accident nor the date when the application was filed. Accordingly, since Hillman had already attained 65 on September 10, 1968, when the Board first considered his application, it had denied the application.

II
N.J.S.A. 43:15A-43 provides, in pertinent part:
A member who has not attained age 65 shall, upon the application of the head of the department in which he is employed or upon his own application or the application of one acting in his behalf, be retired by the board of trustees, if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties, on an accidental disability allowance.
The application to accomplish such retirement must be filed within 5 years of the original traumatic event, but the board of trustees may consider an application filed after the 5-year period if it can be factually demonstrated to the satisfaction of the board of trustees that the disability is due to the accident and the filing *454 was not accomplished within the 5-year period due to a delayed manifestation of the disability or to circumstances beyond the control of the member.
Permanent and total disability resulting from a cardiovascular, pulmonary or muscuolo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.
The benefits accruing to a member retired for accidental disability are prescribed by N.J.S.A. 43:15A-46 which, in relevant part, reads:
A member under 65 years of age upon retirement for accidental disability shall receive a retirement allowance which shall consist of:
a. An annuity which shall be the actuarial equivalent of his accumulated deductions at the time of his retirement together with regular interest; and
b. A pension, in addition to the annuity, of 2/3 of his actual annual compensation for which contributions were being made at the time of the occurrence of the accident.
The pension allowance under N.J.S.A. 43:15A-46(b) exceeds by a substantial margin that allowed under N.J.S.A. 43:15A-45(b) as ordinary disability retirement. For an example of the latter, see Wagner v. Board of Trustees, etc., 87 N.J. Super. 498 (App. Div. 1965).
It is the position of respondent Board that the status of an employee and his eligibility for accidental disability retirement benefits must be considered as of the date the Board acts on his application, in contrast to petitioner's contention that it is the time of the filing of the application that controls. The Board considers that the first clause of N.J.S.A. 43:15A-46 ("A member under 65 years of age upon retirement for accidental disability * * *") controls the opening language of N.J.S.A. 43:15A-43 ("A member who has not attained age 65 shall * * * upon his own application * * * be retired * * *"). It maintains that these sections, when read together, indicate that an employee must formally be retired by action of the Board before he reaches 65 in order for him to qualify for benefits.
*455 In support of this contention respondent cites Reinhold v. Irvington, 134 N.J.L. 416 (Sup. Ct. 1946); Flynn v. Union City, 30 N.J. Super. 467 (Cty. Ct. 1954), aff'd 32 N.J. Super. 518 (App. Div. 1954), certif. den. 17 N.J. 253 (1955), and Ziegler v. State, 95 N.J. Super. 273 (App. Div. 1967). These cases all deal with the situation of an employee applying for both retirement benefits and disability compensation. N.J.S.A. 34:15-43 expressly precluded a retired employee from receiving such compensation, and the cited cases all dealt with instances where the employee was retired prior to the hearing of the compensation claim. Relying on the statutory prohibition, the courts rejected the employees' claims. Reinhold, Flynn and Ziegler are therefore inapposite to the problem presented on this appeal.
We are faced with unfortunately worded statutory provisions. Our task is to give that language a fair and practical interpretation with reference to the purposes of the retirement act. Pension statutes are to be liberally construed to effectuate their remedial intent. As we said in Kochen v. Consolidated Police, etc., Pension Fund Comm'n, 71 N.J. Super. 463, 478 (1962), such construction "resolves all reasonable doubts in favor of the applicability of the statute to the particular case." Cf. Roth v. Board of Trustees, etc., 49 N.J. Super. 309, 319 (App. Div. 1958).
The present language of N.J.S.A. 43:15A-43 and 46 was the result of L. 1966, c. 67, which extensively amended and supplemented the Public Employees' Retirement Act (see §§ 4 and 6). As we view those two sections, the controlling one is N.J.S.A. 43:15A-43, setting out the qualifications for accidental disability retirement. N.J.S.A. 43:15A-46 simply addressed itself to the amount to be allowed on retirement. We have found no legislative history articulating the legislative purpose. The construction which we consider most consistent with the general statutory pattern, the language of section 43, and the fundamental interests of both the applicant and the Board, is that requiring the applicant to be under 65 at the time he makes his application *456 for retirement. This properly places the initial responsibility for diligence on the applicant; thereafter, his rights may not be adversely affected by actions or facts over which he has no control. Both the applicant and the Board may then develop the relevant facts in a thorough and orderly manner.
It would hardly be consonant with the laudable purpose of the act to defeat a petitioner's claim by applying a questionably strict application such as respondent Board here advances. One can conceive of situations where the Board's interpretation of the statute would work gross injustice. Suppose, for example, that the accidentally injured employee were to apply well within the time limit prescribed by N.J.S.A. 43:15A-43  say, some six months before age 65. There would then follow a medical examination of the applicant by a physician designated by the Board, as provided by the fourth paragraph of that section. The medical panel of the Division of Pensions would, as here, then complete its evaluation form and transmit it to the Board. The Board would then have to meet to consider the application. By sheer happenstance these steps would not have been completed until sometime after the applicant had reached age 65. Assuming that the Board denied accidental disability retirement, it would not be for any cause attributable to the applicant. Through no fault of his own, time had run against him.
Or consider a situation where the application is made well within the statutory time limit and the Board erroneously denies accidental disability benefits. Then follows the lengthy process of appeal and a remand for a full Board hearing. Ultimately, the Board recognizes its error, but by this time the applicant had passed well beyond age 65. Regretfully, the Board again denies his application because of overage. Such a palpable miscarriage of justice and of the beneficent purpose of the statute would be entirely possible within respondent's reading of the statute. The only escape from the anomalous conclusion thus reached would be to *457 declare that the subsequent rehearing relates back to the date of the original determination. This would be piling one artificial construction upon another.
The Legislature can hardly be presumed to have set the critical date at so arbitrary and unpredictable a time as the date of final Board disposition. Given the liberal construction to be applied to a pension statute, and given the illogic of deeming the sometimes belated operation of the administrative machinery to be the controlling factor, the statutory consideration contended for by petitioner is by far the more reasonable one.

III
When we first heard this appeal we found it unnecessary, in the then circumstances of the case, to go into the question of statutory construction prior to a Board hearing and determination of the factual issue as to whether Hillman's alleged disability was such that he could, in fact, qualify for an accidental disability retirement pension. That was the reason for our remand. A hearing was held on November 5, 1969 before Hearing Officer Miller of the Division of Pensions. The parties stipulated that Hillman was permanently and totally disabled from performing the duties of a laborer within the meaning of N.J.S.A. 43:15A-43, and that his application for accidental disability retirement was timely filed, as was his appeal from the Board's adverse determination. The hearing officer took the testimony of Dr. Schulz, a specialist in cardiovascular diseases, who had first examined Hillman on May 18, 1967 and obtained a history that on the preceding March 16, during a severe snowstorm and while he was performing strenuous work, petitioner experienced severe and oppressive pain in the center of his chest. It was his opinion that Hillman was permanently and totally disabled from performing his duties as a laborer by reason of his arteriosclerotic heart disease and angina pains, and that his disability was causally related *458 to the work effort of March 16: the unusually severe stress and strain experienced by petitioner at 1:30 on the morning of that day, superimposed on his preexisting arteriosclerosis, resulted in an acute congestive heart failure which, in turn, has become a chronic condition. The testimony petitioner gave is reflected in the facts recited earlier in this opinion as to what he did in the regular course of his duties on March 15 and what happened when he was called out on emergency snow removal duty in the early hours of March 16. His testimony was corroborated by his supervisor.
The Board offered no testimony at the hearing. The hearing officer concluded that petitioner had sustained his burden of proof that he was permanently and totally disabled "as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties," within the meaning of N.J.S.A. 43:15A-43. Among the findings of fact made by the hearing officer were these:
4. On March the 16th, 1967, at approximately 1:30 A.M., Petitioner was engaged in unusually strenuous work and was subjected to unusually adverse weather conditions while in the course of his employment as a maintenance man.
5. On March 16, 1967, at approximately 1:30 A.M., Petitioner experienced a traumatic event while operating a front-end loader during a snowstorm, i.e. the steering wheel of the loader was wrenched out of Petitioner's hands and Petitioner struggled to regain control of the vehicle.
6. As a direct result of the aforementioned traumatic event, Petitioner suffered an attack of acute congestive heart failure which has now become chronic and Petitioner's asymptomic arteriosclerotic heart disease was aggravated to the point where it has now become permanently and totally disabling because of the severe angina pectoris pains which he suffers upon any exertion.
Accordingly, the hearing officer recommended that Hillman's application for accidental disability retirement be approved.
Respondent Board met on November 18, 1969 to consider the hearing transcript, the exhibits and the hearing officer's *459 report. It reaffirmed its earlier decision to deny Hillman's application, giving as its reason that he was not disabled as a result of a traumatic event occurring on March 16, 1967. It did not consider the other reason which it had advanced for denying the application, namely, that Hillman had passed his 65th birthday at the time of the Board's earlier determination. We therefore turn to the question of whether Hillman was "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties," as required by N.J.S.A. 43:15A-43.

IV
The amendment of 1966 (L. 1966, c. 67, § 4) eliminated the language of the original act (L. 1954, c. 84, § 43), which spoke of an employee "disabled as a result of personal injuries sustained in or from an accident arising out of and in the course of his employment." Thus, "traumatic event" replaced the word "accident." Additionally, the 1966 amendment added a new paragraph, which we again quote:
Permanent and total disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.
The use of the words "traumatic event" has been described as "a significant departure from the term `accident' previously found in the act." Titman v. Board of Trustees, etc., 107 N.J. Super. 244, 246 (App. Div. 1969). That case undertook no definition of the substituted term.
There can be no question that the Legislature, by using the words "traumatic event" and adding the paragraph just quoted, clearly expressed an intention to make the granting of an accidental disability pension more difficult. Prior to the 1966 amendment, it was only necessary for an applicant to show that he had suffered permanent *460 disability from "an accident arising out of and in the course of his employment." Our courts tended to equate the pension statutes with the principles applicable in workmen's compensation cases. See, e.g., Fattore v. Police and Firemen's Retirement System, 80 N.J. Super. 541 (App. Div. 1963); Kochen v. Consolidated Police, etc., Pension Fund Comm'n, above, 71 N.J. Super. 463 (App. Div. 1962); Roth v. Board of Trustees, etc., above, 49 N.J. Super. 309 (App. Div. 1958); but cf. Wagner v. Board of Trustees, etc., above, 87 N.J. Super. 498 (App. Div. 1965). This would have required that the liberal construction of "accident" found in such cases as Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), and Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958), be applied to N.J.S.A. 43:15A-43 before its 1966 amendment, thus awarding accidental disability pensions to employees whose preexisting progressive disease had been aggravated by no more than the usual effort or exercise demanded by their employment.
The 1966 amendment was intended to avoid this result by introducing a new term, "traumatic event." Thereafter a pension would be available to those with a preexisting disease only where an unusual or excessive effort aggravated or accelerated that disease.
This view is reenforced by the explicit exclusion, added by the 1966 amendment, of disability resulting from cardiovascular, pulmonary or musculo-skeletal conditions not the direct result of a traumatic event. These conditions are typically progressive, idiopathic and, in the words of Titman, above, at 247, reflected the legislative view that they were "particularly to be scrutinized for directness of connection between the specified traumatic event and the claimant's total disability."
Dictionary definitions of "trauma" are readily available, but of little help. In determining whether there truly was a traumatic event it is important that (a) the event be identifiable as to time and place, (b) the injury or disability resulted directly from it, and (c) the event was undesigned, *461 unexpected and unusual. This case meets all three tests. The time and place are certain. The event  namely, the sudden wrenching of the steering wheel out of petitioner's hands and his struggle to regain control of the front-end loader  aggravated Hillman's preexisting arteriosclerotic heart disease, causing it to become permanent, chronic and totally disabling. Finally, the event was clearly undesigned, unexpected and unusual.
There can be no question that petitioner's present disability is a "direct result" of the traumatic event. As this court said in Titman, "the word `direct' connotes relative freedom from remoteness, whether in terms of time, intervention of other attributive causes or the like, or a combination of such factors." 107 N.J. Super., at 247. The heart attack made chronic what had previously been an asymptomatic condition. Dr. Schulz testified that were it not for the attack, Hillman, who had theretofore been relatively healthy and accustomed to heavy work, could have lived and worked normally and indefinitely.
As in the case of any appellate review of an administrative determination, we must look to see whether the determination finds substantial support in credible evidence present in the whole of the record. The Board totally disregarded the findings and recommendation of Hearing Officer Miller, who had the opportunity to hear and observe the witnesses and to judge of their credibility. It is to be noted that the proofs adduced at the hearing were uncontested. There is little more we can add to what was said by the hearing officer in his comprehensive and excellent report. His recommendation was firmly based in the proofs, and we adopt that recommendation and its underlying detailed findings.
The determination of respondent Board of Trustees is reversed and the Board directed to grant Hillman an accidental disability retirement pension.