RICHARD CIECWISZ, RESPONDENT, v. BOARD OF TRUSTEES,
POLICE AND FIREMEN'S RETIREMENT
SYSTEM, APPELLANT.

Argued November 30, 1987—Decided October 27, 1988.

*John J. Franzini,* Deputy Attorney General, argued the
cause, for appellant (*W. Cary Edwards,* Attorney General of
New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney

General, of counsel; *Ellis I. Medoway,* Deputy Attorney General, on the brief).

*Peter J. Farnsworth* argued the cause, for respondent (*Madnick, Milstein, Mason, Weber & Farnsworth,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

This case is controlled by our decision in the companion case of *Maynard v. Board of Trustees, Teachers' Pension and Annuity Fund,* 113 *N.J.* 169 (1988), in which we held that a slip-and-fall accident is not a traumatic event entitling an injured employee to accidental disability benefits.

Claimant, Richard Ciecwisz, a corrections officer at Rahway State Prison, was permanently and totally disabled as the result of three work-related incidents. On February 9, 1979, he sustained a fractured left clavicle while breaking up a fight between two inmates. On June 2, 1981, he sustained a compressed fracture of a lumbar vertebra when he slipped and fell on some cooking oil spilled on the kitchen floor by two inmates. He again injured his back on May 7, 1983, while subduing an inmate who had "flipped out" in his cell. Ciecwisz filed a claim for accidental disability benefits.

The Board of Trustees, Police and Firemen's Retirement System (the Board) concluded that he was permanently and totally disabled and granted him ordinary, but not accidental disability benefits. In reaching that result, the Board found that the 1981 incident was not a traumatic event and that although the 1983 incident was "traumatic," Ciecwisz's disability was not the direct result of that incident. On Ciecwisz's appeal, the matter was referred to an administrative law judge (ALJ), who agreed, and the Board adopted the ALJ's report.

In an unreported decision, the Appellate Division agreed substantially with the Board, except that the court concluded that the 1981 slip-and-fall accident was a traumatic event that entitled Ciecwisz to accidental disability benefits. We disagree.

As in *Maynard,* we conclude that a slip-and-fall accident does not entail "a great rush of force or uncontrollable power," *Kane v. Board of Trustees, Police & Firemen's Retirement Sys.,* 100 *N.J.* 651, 663 (1985), and that claimant was not injured in a traumatic event that would entitle him to accidental disability benefits.

For the reasons set forth in *Maynard,* we believe that the proposal contained in Justice Stein's dissent does not comport with the legislative intent. 113 *N.J.* at 177. As we stated in *Maynard,* "[p]erhaps the Legislature should revisit this subject, but until it does, our duty is to apply the statute in accordance with the legislative intent." *Ibid.*

Accordingly, we reverse the judgment of the Appellate Division, and reinstate the decision of the Board.

O'HERN, J., dissenting.

I dissent from the judgment of the Court for the reasons set forth in my dissent filed this day in *Maynard v. Board of Trustees,* 113 *N.J.* 169 (1988).

Justice HANDLER joins in this opinion.

STEIN, J., dissenting.

In this case and in *Maynard v. Board of Trustees, Teachers' Pension and Annuity Fund,* 113 *N.J.* 169 (1988), also decided today, the plaintiffs, a corrections officer and teacher, respectively, have sustained injuries resulting in permanent disability. It is undisputed that they are entitled to receive at least ordinary disability benefits, which approximate forty percent of their average final compensation. *N.J.S.A.* 18A:66–41(b); *N.J. S.A.* 43:15A–45(b). However, both employees seek accidental disability benefits, which would instead entitle them to approximately two-thirds of their compensation at the time of the incident that caused their injury. The statutes that govern the right to accidental disability benefits for teachers, *N.J.S.A.* 18A:66–39, for police and firemen, *N.J.S.A.* 43:15A–43, and for

other public employees, *N.J.S.A.* 43:15A–43, condition entitlement to an accidental disability benefit on whether the employee's disability was "a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties."

In both cases, the critical incident involved an injury sustained when the employee fell to the ground from a standing position. In *Maynard*, the plaintiff was a high school English teacher on the way to her mailbox in the high school's main office to pick up student attendance cards. She slipped and fell on a recently waxed floor, striking the back of the right side of her head on a bench and landing on her back on the floor. This incident caused her to be permanently disabled.

In *Ciecwisz*, although the permanent disability resulted from several injuries, the critical event occurred in June 1981. Ciecwisz was a corrections officer assigned to the kitchen of the Marlboro Minimum Security Camp attached to Rahway State Prison. He was proceeding to the dining room to take a head count. Two inmates, working in the kitchen, had poured cooking oil on the floor. Ciecwisz slipped on the cooking oil and fell to the kitchen floor, striking his back and buttocks. After he fell, he heard one of the inmates say, "We got one."

In both cases, the majority holds that the force involved when the public employee's body struck the floor[1] from a standing position is insufficient as a matter of law to qualify as a traumatic event under any of the pertinent statutes, unless the fall was precipitated by a great rush of force or power applied to the victim by a physical object or other external matter. *Ante* at 181–182; *Maynard, supra,* 113 *N.J.* at 174–176. In my view, the majority's holding represents an overly restrictive reading of our prior opinions construing this admittedly inartful statutory phrase and also constitutes an unnecessarily

---

[1] I note that in *Maynard* the public employee's head struck a bench before she fell to the floor.

restrictive view of the underlying legislative intent. I believe the critical inquiry in such cases should focus on the relationship between the event that precipitated the employee's fall and the employee's normal work effort, rather than on the force of the impact of the employee's body when it hits the ground. That inquiry would lead me to affirm the accidental disability benefit award in *Ciecwisz* and to reverse the award in *Maynard*.

Although we have confronted the statutory phrase "traumatic event" on a number of prior occasions, this marks our first effort specifically to address the application of the statute to cases in which an employee falls to the ground and becomes permanently disabled. Thus, it will be helpful to revisit our prior attempts to impart meaning to the term "traumatic event." By way of background, I note Judge Goldmann's opinion in *Hillman v. Board of Trustees, Public Employee's Retirement System*, 109 *N.J.Super.* 449 (1970), one of the earliest Appellate Division cases to deal with this terminology. In *Hillman*, Judge Goldmann found these criteria to be significant in determining whether a traumatic event had occurred:

(a) [T]he event be identifiable as to time and place, (b) the injury or disability resulted directly from it, and (c) the event was undesigned, unexpected and unusual. [109 *N.J.Super.* at 460–61.]

The employee in *Hillman* had been operating a front-end loader. While plowing snow, the front-end loader dropped into a hole and the steering wheel was wrenched from the employee's hands. As he attempted to regain control of the wheel, he experienced severe chest and arm pains, shortness of breath, and inability to stand erect. He was diagnosed as suffering from congestive heart failure due to arteriosclerotic heart disease. The Appellate Division concluded that the sudden wrenching of the steering wheel out of petitioner's hands and the struggle to regain control of the loader constituted a traumatic event that aggravated Hillman's pre-existing heart disease. 109 *N.J.Super.* at 461.

In *Cattani v. Board of Trustees, Police & Firemen's Retirement System*, 69 *N.J.* 578 (1976), this Court rejected only that aspect of the opinion in *Hillman* that intimated that the traumatic-event requirement could be satisfied when disability results merely from the aggravation or acceleration of a pre-existing disease as a result of unusual or excessive work effort. *Id.* at 585. The petitioner in *Cattani* was a fireman who sustained a basilar artery occlusion after performing firefighting duties requiring unusual exertion because of a manpower shortage in his fire company. In rejecting the Appellate Division's conclusion that Cattani's disabling condition resulted from a "traumatic event," Justice Sullivan noted that the statutory phrase focused not on the injury to the body but rather *on the event that caused the injury. Id.* at 586. We concluded in *Cattani* that "[t]he phrase 'traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." *Ibid.* However, we went on to recognize that although external force or violence would constitute the most common illustration of a traumatic event, "the foregoing definition may not be all inclusive and * * * a traumatic event may possibly be found in some situations which do not literally fall within the external force or violence concept but still might be regarded as having traumatic origin." *Ibid.* Justice Pashman, dissenting, did not accept the majority's distinction between the phrase "traumatic event" and "traumatic injury," concluding that it was "meaningless to associate the term with the description of an event. In this regard, the statutory language, 'traumatic event', may be no more than an unfortunate way of referring to an event which resulted in a 'traumatic injury.'" *Id.* at 595 (Pashman, J., dissenting).

We next had occasion to consider the "traumatic event" standard in two cases that involved the combined effect of a "traumatic event" and an underlying pre-existent disease. In *Korelnia v. Board of Trustees of the Public Employees' Retirement System*, 83 *N.J.* 163 (1980), the employee had injured

his back on two prior occasions. The critical injury occurred in August 1976 when he was lifting a forty-pound fire extinguisher to load it into a station wagon. In the process he slipped and dropped the fire extinguisher. To avoid injury to himself, he jumped backwards and injured his spine on the tailgate of the station wagon, resulting in a permanent disability. The PERS Board of Trustees concluded that the employee had not been injured as a direct result of a "traumatic event." The Appellate Division reversed in an unreported opinion, concluding that the employee's disability resulted from the combined effect of a "traumatic event" and pre-existing disease. This Court unanimously[2] agreed with the Appellate Division's determination that the incident constituted a "traumatic event," *id.* at 171, but remanded the matter to the PERS Board of Trustees to determine whether or not the permanent disability was the direct result of the "traumatic event" rather than merely an aggravation of the pre-existent condition. *Id.* at 171–72.

Similarly, in *Gerba v. Board of Trustees of the Public Employees' Retirement System*, 83 *N.J.* 174 (1980), the employee had sustained prior injuries to his back and neck. The critical injury occurred in 1973, when he slipped on an oil spot in the course of inspecting vehicles at a municipal garage, and fell against a parked truck, causing further injury to his lower back. It was determined that the employee was permanently disabled, but the PERS Board of Trustees concluded that his disability was the result of his pre-existent condition and did not directly result from a "traumatic event." The Appellate Division reversed, finding that both the 1973 garage accident and a prior accident sustained by the employee constituted traumatic events and that the permanent disability was a direct result of the combined effect of these traumatic events and the employ-

---

[2]Justice Pashman's dissent was limited to the Court's disposition of the causation issue. 83 *N.J.* at 172–74.

ee's pre-existing disease. We agreed unanimously [3] that each of the incidents resulting in injury to the employee constituted a "traumatic event" within the meaning of *N.J.S.A.* 43:15A–43. *Id.* at 188. Nevertheless, we held that there was sufficient evidence in the record to support the PERS Trustees' determination that the employee's permanent disability was not the direct result of a "traumatic event" but rather resulted from a pre-existent arthritic condition. *Id.* at 188–89.

Thus, although the critical issues in *Korelnia* and *Gerba* involved the interrelationship of a "traumatic event" and a pre-existent condition, our application of the "traumatic event" standard to the slip-and-fall in *Gerba* and to the employee's slip and resultant loss of control of the fire extinguisher in *Korelnia* was far less restrictive than the formulation adopted by the majority today. In this case, the majority opinion observes that neither *Korelnia* nor *Gerba* "focus[ed] on the definition of traumatic event," but concludes that to the extent those cases "may be read as supporting the proposition that a slip and fall is a 'traumatic event,' we reject them." *Maynard, supra,* 113 *N.J.* at 177.

Our most recent attempt to impart consistency to the application of the term "traumatic event" occurred in a trilogy of consolidated cases decided in 1985, *Kane v. Board of Trustees, Police & Firemen's Retirement System,* 100 *N.J.* 651 (1985). In each of the cases, police officers sustained permanent disability and contended that they were entitled to an accidental disability retirement allowance. Police officer Kane injured his ankle and knee when he stepped on an uneven piece of concrete while performing a vacation check on an unoccupied house. In order to avoid falling to the ground, he shifted his weight and injured his ankle and knee, becoming permanently disabled.

---

[3]As in *Korelnia, supra,* Justice Pashman dissented from the Court's disposition of the causation question. 83 *N.J.* at 197–98.

Police officer Canastra injured his leg when he stepped on a large stone in the parking lot of police headquarters. Although he did not fall to the ground, he was unable to straighten his leg, and his knee swelled on the right side. The resulting injury constituted a permanent disability.

In the case of police officer Minner, the critical event involved his effort to close an open fire hydrant by using a steel wrench with a sixteen-inch handle. Minner struck the handle of the wrench with the palm of his right hand, putting the weight of his body behind each blow. The injury to the hand was later aggravated by another incident, which was held to constitute a "traumatic event," and the resulting condition led to surgery and the officer's retirement with a permanent disability.

In each of these three cases, we concluded that the police officer did not sustain the injury as a direct result of a "traumatic event." Acknowledging that some uncertainty had developed on the basis of our prior opinion in *Cattani*, we expressed the following criteria to guide courts in determining when a "traumatic event" had occurred:

> We think it consonant with the legislative intent to characterize a traumatic event as one that arises in cases in which a worker involuntarily meets with a physical object or some other external matter and is victim of a great rush of force or power that he himself did not bring into motion. As *Cattani* makes clear, the focus of inquiry is on the event itself rather than the injury. 69 *N.J.* at 586. The force or power must originate from sources other than the injured party. Hence, to be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
>
> Some examples may serve to illustrate the point. A firefighter who, after battling a blaze over an extended period, is gradually affected by the heat and flames until he suffers definite injury and harm; his injury is part of the stress and strain of his duty and does not qualify him for an accidental disability retirement allowance. The same would be true of the fireman who strains his back while lifting a heavy ladder or one who injuries himself while climbing onto the back of the firetruck to retrieve additional hose. By way of contrast, a fireman who is thrown off the roof of a building by a sudden explosion or a burst of flames suffers an injury that is not part of the strain of normal duty but rather is a consequence of an involuntary mishap involving considerable

> force and power. The same would be true of the fireman who is struck by a falling beam or who falls off the top step of a tall ladder. Both incidents would be viewed as traumatic events within the meaning of the statute. [100 *N.J.* at 663.]

Two aspects of the opinion in *Kane* are particularly significant. First, none of the police officers had fallen to the ground; thus, in *Kane* we were not confronted with the issue presented squarely by the two cases before us. Secondly, although in *Cattani* we acknowledged that a traumatic event could occur without the imposition of external force to the body, our opinion in *Kane* did not mention specifically that important qualification included in our opinion in *Cattani*.

In my view, the criteria set forth in *Kane* were entirely appropriate to resolve the issues presented to the Court in the three cases before it. The three-part test of *Kane* sets forth general guidelines thoroughly consistent with the apparent intent of the Legislature in its effort to make more difficult the award of accidental disability pensions. The first guideline requires that the injuries not be caused by the stress or strain of the normal work effort. *Id.* at 663. This test is consistent with the third prong of Judge Goldmann's formulation in *Hillman, supra,* 109 *N.J.Super.* at 460–61, which required that "the event was undesigned, unexpected and unusual." The underlying principle addressed by this guideline is that injuries incurred by workers in the course of their usual and expected duties are among the risks assumed by workers in the performance of their duties, and hence would not justify the enhanced benefit reflected by an accidental disability award. By comparison, risks and hazards not ordinarily confronted in the normal work effort that lead to permanent disability are most likely the kind of events that the Legislature considered as warranting the added compensation afforded by an accidental disability award.

The second requirement is that the injury was sustained involuntarily, *Kane, supra,* 100 *N.J.* at 663, a self-evident standard justified by the assumption that risks voluntarily

encountered and resulting in permanent disability can adequately be compensated by an ordinary disability award.

The third guideline requires that the source of the injury be a great rush of force or uncontrollable power. *Ibid.* The examples do not suggest that the test is whether the force of the body's impact when it sustains injury is decisive; rather, the examples appear to contemplate a requirement that the injury be caused by an unanticipated event, not part of the normal stress and strain of the work, that leads to permanent injury. *Ibid.*

I believe the majority opinion's literal application of the third standard set forth in *Kane* is inappropriate to resolve the issues before us. Although that guideline was adequate for the cases then before the Court, it is somewhat narrow for purposes of general application of the "traumatic event" requirement. Our opinion in *Cattani* adverts to the need for some flexibility to take into account those cases where the external event that precipitates the injury does not involve a rush of force or uncontrollable power. 69 *N.J.* at 586.

The view that some flexibility in the criteria is appropriate is further supported by the Assembly Appropriations Committee Statement to Assembly Bill 491. That bill, passed after our decision in *Kane,* authorized an extension of accidental disability retirement benefits to members of the Teachers Pension and Annuity Fund and the Public Employees' Retirement System who suffer "traumatic events" while voluntarily performing regular or assigned duties at a place of employment *before or after* their required hours of employment. As originally proposed, the bill set forth a broader standard of medical causation for accident disability awards, replacing the requirement that disability occur "as a direct result of a traumatic event," with the requirement that disability result from a "personal injury sustained in or from an accident." The Appropriations Committee amendments restored to the bill the "traumatic event" standard, the existing statutory requirement for accidental disability awards. Significantly, although retaining the "trau-

matic event" standard, the Committee expressed its view that the concept of "traumatic event" is not necessarily limited to situations involving injuries resulting from external force or violence:

> The amendments restore to the TPAF disability retirement section, in section one of the bill, the existing statutory language of disability "as a direct result of a traumatic event. ..." This restores the more exacting standard of medical causation for eligibility of benefits which is currently required by the statute and the case law. *A "traumatized event" would ordinarily entail a traumatic injury suffered as a result of an external force or violence and in other situations having traumatic origins such as exposure to toxic fumes, smoke or gases.* [*L.*1986, *c.* 51 (emphasis supplied).]

We acknowledge that a subsequent legislative construction of a statute is by no means binding. Nevertheless, comments such as the Assembly Appropriations Committee Statement, although not part of the legislative history of the statute, are entitled to consideration as an informed opinion concerning its proper interpretation. *See* N.N. Singer, 2A *Sutherland Statutory Construction,* § 49.11 (Sands 4th ed. 1984 Rev.). As does our opinion in *Cattani,* the Committee Report suggests that there are other forms of traumatic events not involving external force or violence. The example offered by the Committee is "exposure to toxic fumes, smoke or gases." In cases involving employees that fall down without being struck by a violent blow, examples come to mind of precipitating events that appear to possess the essential characteristics of a "traumatic event": an employee deliberately tripped by a foot or a rope; an employee about to sit down whose chair is pulled away causing the employee to fall to the floor; or, as in the case of *Ciecwisz,* a slippery substance such as cooking oil deliberately spread on the floor causing the employee to fall. In these examples, the precipitating events do not involve force or violence, but otherwise possess all of the characteristics of a "traumatic event" that we have identified. The exposure to the risk was involuntary; the injuries were not induced by the stress or strain of normal work effort; and the source of the injury was an external force, although not one of uncontrollable power. In my view, the formulation advanced by the Court in

*Kane* can appropriately be modified to take into account those unusual instances in which the precipitating event does not involve a rush of great force but nevertheless possesses those qualities that undoubtedly prompted the Legislature to conclude that certain unexpected injuries out of the normal course of an employee's duties warrant the award of an accidental disability benefit.

This analysis leads me to the conclusion that the injury sustained in the *Maynard* case was not the direct result of a "traumatic event." The precipitating force in that case was merely a waxed floor, which can fairly be said to be the type of hazard a school teacher might expect to encounter on occasion while walking within the confines of a public school building. It is not a hazard so far removed from the normal duties of a school teacher as to possess the quality that we have heretofore associated with the phrase "traumatic event." By way of comparison, although correction guards may anticipate exposure to hazards in the course of their duties, the precipitating event involved in *Ciecwisz, i.e.,* cooking oil deliberately poured on the floor that caused him to slip and fall, was in my view sufficiently removed from the stresses and strains of his ordinary duties to qualify as a traumatic event.

Of course, it would be helpful if the Legislature would see fit to clarify its meaning and provide more specific criteria in the relevant statutes that govern the award of accidental disability benefits to public employees. Until then, eschewing rigid formulas and by a pragmatic application of the statute to the facts of each case, we should attempt to construe the statute in a manner consistent with the Legislature's probable purpose.

For the reasons stated, I dissent from the Court's disposition in *Ciecwisz.*

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK and GARIBALDI—4.

*For affirmance*—Justices HANDLER, O'HERN and STEIN—3.