817 A.2d 340 (2003)
358 N.J. Super. 112
Joseph ESPOSITO, Petitioner-Appellant,
v.
POLICE AND FIREMAN'S RETIREMENT SYSTEM, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 2003.
Decided March 7, 2003.
*342 Fusco & Macaluso, attorneys for appellant (Darren Del Sardo, on the brief).
David Samson, Attorney General of New Jersey, attorney for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel; Anthony D. Tancini, Deputy Attorney General, on the brief).
Before Judges PETRELLA, BRAITHWAITE and PARKER.
*341 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Petitioner Joseph Esposito appeals from a final decision of respondent Board of Trustees of Police and Fireman's Retirement System ("PFRS"), denying his application for accidental disability retirement benefits. On appeal, petitioner contends that PFRS: (1) erred in not adopting the Administrative Law Judge's ("ALJ") initial decision finding him eligible for accidental disability benefits; and (2) "was clearly mistaken" in not adopting the ALJ's conclusion when it adopted all of the ALJ's factfinding. We agree with petitioner and now reverse.
The facts leading up to petitioner's application for accidental disability retirement benefits are as follows. Petitioner was an officer for the Edison Township Police Department from May 25, 1984, to October 13, 2000. On November 10, 1996, petitioner was directing traffic for an event that drew a large crowd. During his shift, a vehicle sped toward him at approximately forty to forty-five miles per hour, and failed to yield. Petitioner had to jump out of the way to avoid being hit, whereby he sustained serious injuries to his knee, requiring surgery. Although petitioner claims that his leg was grazed by the car, the ALJ and PFRS found that there was no actual contact between the car and petitioner's leg. The finding that petitioner was not struck by the vehicle is supported by the credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). The injury caused petitioner to take three months off from work and upon his return he assumed limited duties in the traffic division.
On March 30, 2000, petitioner reinjured his knee while attempting to apprehend a suspect. Petitioner claims that the reinjury can be attributed to the knee's *343 weakened condition resulting from the November 10, 1996, incident. Petitioner's reinjury necessitated more surgery. On April 13, 2000, petitioner applied for accidental disability retirement benefits.
PFRS denied petitioner's request for accidental disability benefits, but granted ordinary disability benefits. Petitioner contested that determination. The matter was transferred to the Office of Administrative Law as a contested case. Following a hearing, the ALJ determined that the incident that occurred on November 10, 1996, constituted a "traumatic event." As such, the ALJ concluded that petitioner was entitled to accidental disability benefits. PFRS adopted the ALJ's findings of fact, but rejected her conclusions of law. This appeal followed.
N.J.S.A. 43:16A-7 governs accidental disability retirement benefits. It provides that a member will receive accidental disability benefits if he is:
permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties... and that such member is mentally or physically incapacitated for the performance of his usual duty.
[N.J.S.A. 43:16A-7(1).]
To qualify for accidental disability retirement benefits, a member must prove (1) that he is permanently and totally disabled; (2) that his disability is a direct result of a traumatic event; and (3) that the traumatic event occurred during and as a result of his regular duties. PFRS rejected the ALJ's decision and concluded that the event that occurred on November 10, 1996, was not a traumatic event.
In Cattani v. Board of Trs., Police and Firemen's Ret. Sys., 69 N.J. 578, 355 A.2d 625 (1976), our Supreme Court recognized the legislative intent to limit the grant of accidental disability benefits when the Legislature amended the statute to require that an injury be "`a direct result of a traumatic event'" instead of it being naturally and proximately caused by an accident. Id. at 584, 355 A.2d 625. In Cattani, the Court concluded that a traumatic event required an "external force or violence." Id. at 586, 355 A.2d 625.
In 1985, the Court issued a decision in three consolidated cases, Kane v. Board of Trs., P.F.R.S., Canastra v. Board of Trs., P.F.R.S., and Minner v. Board of Trs., P.F.R.S., 100 N.J. 651, 498 A.2d 1252 (1985) (herinafter Kane). The Court acknowledged that Cattani failed to elucidate the meaning of "traumatic event" and clarified that definition. Id. at 662-63, 498 A.2d 1252. To comport with the legislative intent and in agreement with Cattani, the Court characterized a traumatic event "as one that arises in cases in which a worker involuntarily meets with a physical object or some other external matter and is [the] victim of a great rush of force or power that he himself did not bring into motion." Id. at 663, 498 A.2d 1252.
The Court articulated a three-pronged test a petitioner must meet in order to be eligible for accidental disability benefits. A petitioner must demonstrate:
(1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
[Ibid.]
Here, PFRS based its rejection of the ALJ's decision on the grounds that petitioner failed to satisfy all three prongs. PFRS rejected the ALJ's recommendation and concluded that petitioner's injury was "(1) the result of the stress and [strain] of the normal work effort; (2) he voluntarily *344 met with the source of his harm; and (3) the source of Petitioner's injury was not a great rush of force or uncontrollable power."
To satisfy the first prong, petitioner must demonstrate that his injuries were not induced by the stress or strain of the normal work effort. "The determination of what constitutes the stress or strain of the normal work effort requires a fact-sensitive inquiry." Gable v. Board of Trs. of the Pub. Employees' Ret. Sys., 115 N.J. 212, 222, 557 A.2d 1012 (1989). Just because an incident is a possible risk within the scope of one's employment, does not mean that it constitutes normal stress or strain. Id. at 223, 557 A.2d 1012. In Gable, where a corrections officer sustained injuries from an attack by an inmate, the Court reasoned that:
[t]hese violent incidents are clearly distinguishable from the sort of commonplace happenings that ... are part of the stress and strain of the normal work effort: a police officer stepping on a stone; a firefighter climbing onto a fire truck; a firefighter lifting a heavy ladder.... We recognize that a corrections officer's job is dangerous. There is always the possibility that he or she will be attacked violently by an inmate. Likewise, a firefighter might be struck by a falling beam, blown off a roof, or fall from a tall ladder. These occurrences, however, while occupational hazards, do not occur frequently enough to constitute normal stress or strain.
[Id. at 223, 557 A.2d 1012.]
Here, although petitioner was performing traffic duty, and the possibility existed that a speeding driver would disregard his command and nearly run him over, we disagree with PFRS that such risk constitutes normal stress or strain. PFRS even conceded that "encountering an unlawful motorist could be seen as excessive or even unusual." An event where a driver fails to yield to a traffic officer's command and nearly hits the officer, is not a commonplace risk. Therefore, we conclude that petitioner satisfied the first prong of the Kane test.
To satisfy the second prong, petitioner must prove that the injury originated from his involuntary exposure to the source of the harm. See Kane, supra, 100 N.J. at 663, 498 A.2d 1252. The term "involuntary" is narrowly construed for policy reasons. Estate of Terminelli v. Police and Firemen's Ret. Sys., Div. of Pensions, 290 N.J.Super. 231, 235, 675 A.2d 673 (App.Div.) (citing Gable, supra, 115 N.J. at 224, 557 A.2d 1012), aff'd, 148 N.J. 433, 690 A.2d 593 (1997). In Gable, the Court stated that "[p]olicy reasons ... support our conclusion that the `involuntary' prong should be read narrowly. We do not want corrections officers to shy away from subduing unruly inmates. Nor do we want to discourage police officers from chasing criminal suspects." Gable, supra, 115 N.J. at 224, 557 A.2d 1012. The Court cited Kane, and other cases for the proposition that in determining whether an action is involuntary we should consider "only whether the injured party actually set in motion the object or source of his injury." Ibid. (in Kane, a police officer who pounded his palm against the handle of a wrench in an attempt to tighten the screw on a fire hydrant, and thereby suffered a wrist injury, did not satisfy the involuntary prong).
Here, petitioner jumped out of the path of an oncoming speeding vehicle. In accordance with the policy of construing the involuntary prong narrowly, we certainly do not want to discourage an officer from jumping out of the way of a speeding vehicle; therefore, although the motion of jumping out of the way requires a voluntary act, the source of the harm that set *345 the chain of events in motion that led to the voluntary act was not petitioner. In other words, "the injured party [did not] actually set in motion the object or source of his injury." Ibid. We, therefore, conclude that petitioner satisfied the second prong of the Kane test.
To satisfy the third prong petitioner must prove that he was the "victim of a great rush of force or power that he himself did not bring into motion." Kane, supra, 100 N.J. at 663, 498 A.2d 1252. Generally, the injury must result from the application of an "external force to the body or the violent exposure of the body to some external force." Nelson v. P.F.R.S., 93 N.J.A.R.2d (TYP) 87, 1993 WL 148173 (P.F.R.S.) (citing Kane, supra, 100 N.J. at 664, 498 A.2d 1252). The Kane Court noted that "the focus of inquiry is on the event itself rather than the injury." Kane, supra, 100 N.J. at 663, 498 A.2d 1252.
"An important factor in determining whether or not a traumatic event has occurred is whether the individual comes into contact with the ground or another physical object." Nelson, supra, 93 N.J.A.R.2d (TYP) 87, 1993 WL 148173 (P.F.R.S.) (citing Kane, supra, 100 N.J. at 664, 498 A.2d 1252). It has generally been held since Kane that slips-and-falls at ground level are not traumatic events because they do not involve a great rush of force or uncontrollable power. See Maynard v. Board of Trs. of Teachers Pension and Annuity Fund, 113 N.J. 169, 549 A.2d 1213 (1988) (not a "traumatic event" where schoolteacher slipped and fell on highly polished floor); Ciecwisz v. Board of Trs., P.F.R.S., 113 N.J. 180, 549 A.2d 1218 (1988) (not a "traumatic event" where corrections officer slipped and fell on cooking oil spilled on floor by inmates).
However, where an injury is sustained from a fall higher than ground level, a petitioner may satisfy this third prong. Quigley v. Board of Trs. of Pub. Employees' Ret. Sys., 231 N.J.Super. 211, 218-19, 555 A.2d 642 (App.Div.1989) (a fall five feet from the back of a truck and a fall four feet from a running board were falls from places high enough above ground level to constitute a "traumatic event"). In fact, the third prong of the Kane test may be met even where the worker's own conduct contributed to the fall. Maynard, supra, 113 N.J. at 175, 549 A.2d 1213.
In Maynard, the Court distinguished between an ordinary ground level slip-and-fall and a fall from a greater height even where the injured party was in part to blame for his descent:
In slip-and-fall cases, no force or power originates anywhere except from the person falling. Any gravitational force that is generated by the fall is not "great," as that term was used in Kane. Although a fireman who falls from the top step of a tall ladder also falls as a result of his or her own conduct, the height of the ladder generates a gravitational force that, unlike that of someone who is standing on the ground, is "great."

[Ibid.]
We conclude from these cases "that there is a general assumption that the further a body falls, the greater the force the ground asserts to stop the fall." Nelson, supra, 93 N.J.A.R.2d (TYP) 87, 1993 WL 148173 (P.F.R.S.).
That being said, in Nelson, PFRS held that a park ranger satisfied the third prong of the Kane test when he sustained injuries by jumping off of a collapsing wall from a height of approximately five feet. "Petitioner jumped up in an arc in efforts to fall into the roadway to avoid falling into the ditch and to avoid slipping into collapsing boulders and having rocks fall on him.... It is reasonable to infer that he *346 jumped up somewhat in excess of five feet." Ibid. In the opinion issued by the ALJ and adopted by PFRS, the ALJ reasoned that "[t]he necessity that petitioner jump in order to avoid more serious injury was ... caused by ... an occurrence of nature.... [He] jumped ... to avoid more serious injury ... and ... cannot be said to have voluntarily subjected himself to contact with the ... roadway." Ibid. (we note that this rationale covers both the involuntary prong and the great rush of force or uncontrollable power prong). The ALJ concluded that it was clear that the park ranger's "body met the roadway with great force." Ibid.
Here, PFRS analogized this matter to the slip and fall cases and concluded that petitioner failed to satisfy the third prong of the test for accidental disability benefits. We are satisfied that, based on the facts, PFRS erroneously applied the law. We owe no deference to an administrative agency's "interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973).
We conclude that had petitioner been struck by the vehicle traveling at forty to forty-five miles per hour and suffered this injury the third prong of the test would have been met. We perceive no basis here to reach a different conclusion because petitioner jumped out of the way to avoid being struck, which perhaps could have caused him greater injury.
The ALJ correctly noted the difference between the slip and fall cases relied upon by PFRS and petitioner's case. She said in part:
A careful reading of the slip and fall cases reveals that the source of the struggle in analyzing the event causing the injury is the total absence of any outside force or power. The only force in a slip and fall case is the gravitational force and for that force to be considered great enough the fall must occur from some specific, but as yet undefined, height. In the present matter no such struggle is necessary, however, because the source of the injury was the force of a moving motor vehicle which would have hit appellant had he not jumped out of its way. Appellant's fall was not caused by his own misstep. It was caused by a careless motorist over whom he had no control.
Further, the ALJ noted the distinction between cases involving external causes and those that result from a petitioner's own conduct. She said:
The Court in Gable v. Board of Trustees, 115 N.J. 212, 222, 557 A.2d 1012 (1989) distinguished between incidents that involve solely external causes and those which result from an employee's own conduct:
Unlike Maynard v. Board of Trustees, supra, and Ciecwisz v. Board of Trustees, supra, however, the instant case does not require us to examine the third prong of the Kane test. Here, the corrections officers clearly sustained injuries as a result of "a great rush of force or uncontrollable power." Each incident was caused by a violent external forcethe actions of an unruly inmate. This contrasts with Maynard/Ciecwisz, where the parties merely slipped and fell, the source of the force of power causing injury coming about as a result of their own conduct. Id. at 222, 498 A.2d 1252.
The holding of the Supreme Court in Mazza v. Board of Trustees, 143 N.J. 22, 667 A.2d 1052 (1995) does nothing to diminish the holding in Gable and does not compel a different conclusion in the within matter merely because the injury to appellant's knee involved a twisting action. In fact, although the Court in *347 Mazza affirmed the Board of Trustees' determination that the disabling incident (which occurred when the officer's horse bucked and "reared up" causing the officer's body to twist in the saddle and suffer a rupture of spinal discs) lacked the requisite great rush of force or uncontrollable power, it specified that the reason for its affirmance was "not because no lifting or twisting case can ever be considered traumatic, but because this twisting case was found not to be traumatic by the Pension Trustees because it did not involve a great rush of force or uncontrollable power." Id. at 25, 667 A.2d 1052. Furthermore, the Court's focus in Mazza appears to be upon the absence of any impact to Officer Mazza's body.
Here, the force of the speeding vehicle caused petitioner to jump out of the way, causing his injury. When we focus here on the event, we are satisfied that PFRS erred in denying petitioner's claim for accidental disability benefits. Kane, supra, 100 N.J. at 663, 498 A.2d 1252.
We recognize that we have a "limited role to play in reviewing the actions of other branches of government." In re Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996) (citing Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n, 93 N.J. 384, 390, 461 A.2d 575 (1983)). However, we can intervene when "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Ibid. (citing Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963)). We are satisfied that this is a case for our intervention.
Reversed.