861 A.2d 186 (2004)
373 N.J. Super. 288
Delores FAIRWEATHER, Petitioner-Appellant,
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 2004.
Decided November 29, 2004.
*187 Charly Gayden, argued the cause for appellant (McCarthy and Schatzman, attorneys, Princeton; Ms. Gayden, on the brief).
David Dembe, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Susanne Culliton, Deputy Attorney General, on the brief).
Before Judges AXELRAD, R.B. COLEMAN and HOLSTON, JR.[1]
The opinion of the court was delivered by
*188 AXELRAD, J.T.C. (temporarily assigned).
Petitioner, Delores Fairweather, appeals from the final administrative action of the Board of Trustees of the Public Employees' Retirement System (Board) that denied her application for accidental disability retirement benefits. She sustained the injuries that served as the basis for her claim when a frightened mental patient, who she was trying to evacuate from a burning cottage, jerked his hand away from hers and they slid down the icy steps to the ground. As a result of the fall, petitioner sustained serious and permanent injuries. The Board found petitioner to be permanently disabled and awarded her ordinary disability retirement benefits under N.J.S.A. 43:16A-6. It held, however, that the injuries did not result from a "traumatic event" as required by N.J.S.A. 43:15A-43, and denied petitioner accidental disability retirement benefits. We reverse.
Following the initial denial of her application by the Board, petitioner requested a hearing and the matter was transmitted to the Office of Administrative Law (OAL) as a contested case. The parties stipulated that petitioner was permanently and totally disabled as a direct result of the incident which occurred during the performance of her assigned duties. See N.J.S.A. 43:15A-43. Disposition of the case therefore turned on whether the incident met the traumatic event prong of N.J.S.A. 43:15A-43.[2] Administrative Law Judge (ALJ) Metzger conducted a hearing on June 10, 2003, at which petitioner and her supervisor, Joyce Miles, testified.
The facts adduced at the hearing were either stipulated or undisputed. On January 30, 2000, petitioner was a Residential Living Specialist at the Trenton Psychiatric Hospital, where she had been employed for three years. She had direct care responsibilities for seven low-functioning mentally ill residents of cottage # 9. That evening a fire alarm sounded in cottage # 9. Petitioner observed fire and smoke coming from a window. After evacuating and taking a headcount of the patients, petitioner was unable to account for "Patient G." Another patient reported that he was at the back of the building.
Petitioner went to the back of the cottage and observed the patient standing at the back door, trying to open it. Three steps and a landing led to this door and the area was covered with snow and ice. According to petitioner, the patient was delirious and began telling her that the voices in his head were talking to him, that the voices had told him to set the fire, and that he did not set the fire. Petitioner attempted to calm the patient and encourage him to leave the area with her because the building was on fire. However, the patient did not move. Petitioner then went up the three steps to the landing. She put her hand out to the patient and told him to come with her. The patient then took her hand and they both started down the stairs.
As petitioner was about to take her first step from the top of the landing, the patient suddenly hesitated, turned away from her and jerked his hand from her hand, causing her to lose her balance. They both slid down the three steps to the ground. The patient fell next to her. The *189 patient was about 5'5" tall and weighed 200 pounds. Petitioner helped the patient up and walked him to the front of the building. Shortly thereafter, petitioner began to feel pain in her lower back and right knee. She saw the doctor on duty at the facility and then went to the hospital. She never returned to work.
In his June 24, 2003 decision, the ALJ concluded that the incident was a traumatic event and recommended that petitioner be awarded accidental disability retirement benefits. More specifically, the ALJ found that petitioner met the three-prong test of Kane v. Board of Trustees, Police and Firemen's Retirement System, 100 N.J. 651, 663, 498 A.2d 1252, 1258 (1985), to constitute a requisite traumatic event: that the injury (1) was not induced by normal work strain, (2) was involuntary, and (3) originated from "a great rush of force or uncontrollable power." As to the first two prongs, the ALJ found "[t]hough attending to patients was a normal part of [petitioner's] day, this did not include sliding down icy steps. Neither did petitioner come voluntarily to the source of her injury within the meaning of the cases, as her actions were necessary to escort the patient to safety." (citation omitted).
The ALJ also found the third Kane prong to be satisfied "when the patient jerked his hand away from petitioner, causing her to lose balance and slide uncontrollably on ice down three steps to an injury that permanently disabled her." The ALJ systematically distinguished the present case from the slip and fall cases which have been held insufficient to meet the "great rush of force" test, stating:
Although this situation has elements in common with the slip and fall cases that have been held not to meet the "great rush of force" test, Maynard v. Board of Trustees of Teachers' Pension and Annuity Fund, 113 N.J. 169, 549 A.2d 1213 (1988) and Ciecwisz v. Board of Trustees of Police and Firemen's Retirement System, 113 N.J. 180, 549 A.2d 1218 (1988), there are distinguishing characteristics here. Petitioner found herself in the midst of an emergency with a delirious patient. As the patient jerked away from her, he threw them both off balance and they both slid down the icy steps to the ground. The typical slip and fall does not contain these aggravating factors.
The ALJ then compared the circumstances in this case to one in which a traumatic event was found:
The closer analogy is to Flores v. Board of Trustees, Public Employees Retirement System, 287 N.J.Super. 274, 670 A.2d 1113 (App.Div.1996). There a public works employee was standing at an open trench to monitor a sewer line installation. The roadway collapsed and the employee fell three and one half feet onto a pipe. Petitioner here did not slip while walking about in the normal course of events, rather as in Flores, the fall arose largely from external factors.... The situation here is not meaningfully different.
On September 18, 2003 the Board issued a written decision rejecting the ALJ's analysis and recommendation, and determined that petitioner did not suffer a traumatic event for purposes of accidental disability retirement benefits. The Board found this case did not have the distinguishing characteristics of Flores. Relying upon an unpublished Appellate Division opinion,[3] the Board characterized *190 this case as a typical slip and fall incident similar to Maynard, supra, 113 N.J. at 169, 549 A.2d at 1213 and Ciecwisz, supra, 113 N.J. at 180, 549 A.2d at 1218 (both holding that slip and fall accidents were not traumatic events). The Board determined that petitioner "did not meet with a great rush of force or uncontrollable power, as she ... was neither struck nor hit, causing her to lose her balance. Rather, when the patient let go of petitioner's hand, she lost her balance on the ice, causing her to slip and fall."
We are mindful of the deference afforded an administrative agency and our limited role in reviewing its decisions, intervening only in rare circumstances where the agency action is arbitrary, capricious, unreasonable or not supported by the evidence in the record. See, e.g., Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256, 1259-60 (1992); Campbell v. Dept. of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712, 715 (1963). We are also aware that in amending the statute in 1966 to require that an injury be "a direct result of a traumatic event" instead of it being proximately caused by an "accident" consonant with workers' compensation precedent, the legislature intended to limit the grant of accidental disability benefits. See Kane, supra, 100 N.J. at 661, 498 A.2d at 1257; Cattani v. Board of Trustees, Police and Firemen's Retirement System, 69 N.J. 578, 584, 355 A.2d 625, 628 (1976) and Russo v. Teachers' Pension and Annuity Fund, 62 N.J. 142, 150-51, 299 A.2d 697, 701-02 (1973). This is so because accidental disability pension benefits provide for just over 66% of the member's salary to be paid for life, regardless of her age, service time, or contributions made to the retirement system. N.J.S.A. 43:15A-46. By contrast, ordinary disability retirement benefits provide 43.6% of the member's final average salary and require that a member have at least ten years of New Jersey service, N.J.S.A. 43:15A-45.
Our review of the Board's denial of accidental disability pension benefits to petitioner, however, is not "simply a pro forma exercise in which [we] rubber stamp findings that are not reasonably supported by the evidence." Chou v. Rutgers, 283 N.J.Super. 524, 539, 662 A.2d 986, 993 (App.Div.1995), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). In the interest of justice we abandon our traditional deference to agency decisions when an agency's decision is manifestly mistaken. See Outland v. Board of Trustees of Teachers' Pension and Annuity Fund, 326 N.J.Super. 395, 400, 741 A.2d 612, 615 (App.Div.1999) (citing P.F. v. New Jersey Div. of Developmental Disabilities, 139 N.J. 522, 530, 656 A.2d 1, 4-5 (1995)). Moreover, although we respect the agency's expertise, ultimately, interpretation of statutes is a judicial, not an administrative, function and we are in no way bound by the agency's interpretation. Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497, 501 (1973).
We briefly summarize the pertinent cases addressing the question of what constitutes a "traumatic event" for entitlement to accidental disability retirement benefits. Initially, in Cattani, supra, 69 N.J. at 578, 355 A.2d at 625, our Supreme Court held that a fireman who exerted himself to an unusually excessive degree in the course of extinguishing a fire because of the shortage of men in his unit was not entitled to this higher allowance. The *191 Court emphasized that "work effort alone, whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated ... [a] preexisting disease." Id. at 586, 355 A.2d at 629. The Court also stated: "The phrase `traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." Ibid. Recognizing that its definition was not exclusive, the Court further held that "a traumatic event may possibly be found in some situations which do not literally fall within the external force or violence concept but still might be regarded as having a traumatic origin." Ibid.
In Kane, supra, 100 N.J. at 651, 498 A.2d 1252, the Court held that three police officers did not suffer "traumatic events" sufficient to warrant the award of accidental disability benefits. The disabling injuries to two of the officers were caused by stepping on a large stone in the headquarters parking lot and on an uneven piece of concrete; and, to the other, by pounding his open palm against the handle of a steel wrench while trying to close a fire hydrant. Id. at 654-58, 498 A.2d at 1253-55. Noting the inconsistencies in prior decisions, the Court sought to clarify the term "traumatic event" as used in the amended statute:
We think it consonant with the legislative intent to characterize a traumatic event as one that arises in cases in which a worker involuntarily meets with a physical object or some other external matter and is victim of a great rush of force or power that he himself did not bring into motion. As Cattani makes clear, the focus of the inquiry is on the event rather than the injury. 69 N.J. at 586, 355 A.2d 625 [at 629]. The force or power must originate from sources other than the injured party. Hence, to be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
[Id. at 663, 498 A.2d at 1258].
The Court cited examples to illustrate the level of force necessary to constitute a traumatic event:
A firefighter who, after battling a blaze over an extended period, is gradually affected by the heat and flames until he suffers definite injury and harm; his injury is part of the stress and strain of his duty and does not qualify him for an accidental disability retirement allowance. The same would be true of the fireman who strains his back while lifting a heavy ladder or one who injures himself while climbing onto the back of the firetruck to retrieve additional hose. By way of contrast, a fireman who is thrown off the roof of a building by a sudden explosion or burst of flames suffers an injury that is not part of the strain of normal duty but rather is a consequence of an involuntary mishap involving considerable force and power. The same would be true of the fireman who is struck by a falling beam or who falls off the top step of a tall ladder. Both incidents would be viewed as traumatic events within the meaning of the statute.
[Ibid.]
Even with this clarification, our Supreme Court has continued to wrestle with, and has had considerable difficulty, interpreting the requirement that the source of the disabling injury be "a great *192 rush of force or uncontrollable power." See Maynard, supra, 113 N.J. at 177-79, 549 A.2d at 1217-18 (Stein, J., concurring and O'Hern, J., dissenting); Ciecwisz, supra, 113 N.J. at 182-192, 549 A.2d at 1219-25 (O'Hern, J. and Stein, J., dissenting). See also Mazza v. Board of Trustees, Police and Firemen's Retirement System, 143 N.J. 22, 25-30, 667 A.2d 1052, 1054-56 (1995) (Handler, J., dissenting)(holding in a per curiam opinion on narrow standard of review grounds, that a mounted police officer who twisted and ruptured several spinal discs when his horse reared, had not sustained an injury as a result of a traumatic event).
Our Supreme Court expounded upon the meaning of the statutory term "traumatic event" in two slip and fall cases, Maynard, supra, 113 N.J. at 172-73, 549 A.2d at 1214-15, and Ciecwisz, supra, 113 N.J. at 180, 549 A.2d at 1218. Maynard involved a teacher who slipped and fell on a highly polished waxed floor in school and struck her head on a wooden bench. Ciecwisz involved a correction officer who slipped and fell on cooking oil that had been spilled on the kitchen floor by two inmates. In both cases, the Court concluded that the claimants satisfied the first two parts of the Kane test. The Court held, however, that neither claimant satisfied the third prong of a traumatic event because the level ground slip-and-fall accidents lacked the requisite great rush of force or uncontrollable power. Maynard, supra, 113 N.J. at 175, 549 A.2d at 1216; Ciecwisz, supra, 113 N.J. at 182, 549 A.2d at 1219-20. The Court further explained:
the source of the force or power causing the injury came about as the result of petitioner's own conduct. ... In slip-and-fall cases, no force or power originates anywhere except from the person falling. Any gravitational force that is generated by the fall is not `great,' as that term was used in Kane. Although a fireman who falls from the top step of a tall ladder also falls as a result of his or her own conduct, the height of the ladder generates a gravitational force that, unlike that of someone who is standing on the ground, is `great.'
[Maynard, supra, 113 N.J. at 175, 549 A.2d at 1216 (emphasis added).]
In Barney v. Board of Trustees, Police and Firemen's Retirement System, 238 N.J.Super. 556, 570 A.2d 456 (App.Div.), certif. denied, 122 N.J. 168, 584 A.2d 233 (1990), we upheld the denial of an accidental disability pension to a police officer who lost his balance after stepping on a loose brick and falling down five flights of stairs. We viewed the accident as a slip and fall that "was not appreciably different from the slip and fall of the teacher on the highly polished floor discussed in Maynard." Id. at 559, 570 A.2d at 458. Thus, as in the other slip and fall cases, the force or power that caused the accident was the officer's act of stepping on the loose brick and did not originate anywhere except from the officer falling.
On the other hand, in Gable v. Board of Trustees of the Public Employees' Retirement System, 115 N.J. 212, 222, 557 A.2d 1012, 1017 (1989), our Supreme Court held that two correction officers who suffered disabling injuries as a result of physical confrontations with violent, unruly inmates were involved in "traumatic events" within the meaning of N.J.S.A. 43:15A-43. One guard had been kicked in the chest by an inmate on one occasion and propelled against a concrete wall on another occasion. The other guard had been dragged down the stairs by an inmate seeking to escape while being escorted from court. Id. at 215-18, 557 A.2d at 1014-15. The Court held that the guards who were assaulted by the inmates "clearly sustained injuries as a result of `a great rush of force *193 or uncontrollable power.'" Id. at 222, 557 A.2d at 1017. In reaching this conclusion, the Court distinguished this type of case, which involves external forces, from the slip and fall incidents that result from an employee's own conduct:
Each incident was caused by a violent external force  the actions of an unruly inmate. This contrasts with Maynard/Ciecwisz, where the parties merely slipped and fell, the source of the force or power causing the injury coming about as the result of their own conduct.
[Ibid.]
In Flores, supra, 287 N.J.Super. at 274, 670 A.2d at 1113, referenced by the ALJ as factually similar to the present case, we held that an accident caused by a violent external force qualifies as a traumatic event for entitlement to accidental disability pension allowances. In Flores, a public works supervisor was leaning over an open trench and holding a rod to measure elevations of a pipe while monitoring a sewer line installation. The surface of blacktop roadway suddenly collapsed, causing him to fall about three and a half feet straight down into the trench and strike his lower back on the pipe, resulting in a disabling injury. The ALJ found the accident constituted a "traumatic event." The Board rejected the ALJ's recommended decision, holding that collapse of the roadway and petitioner's resulting fall onto the metal sewer pipe did not constitute a "traumatic" event. Id. at 277, 670 A.2d at 1115. We were not convinced by the Board's reliance on the Maynard/ Ciecwisz/Barney slip and fall line of cases and reversed, holding that the supervisor's accident constituted a traumatic event under the test set forth in Kane. We continued, "[a]s in Gable, the force or power that caused the accident  the collapse of a roadway  was completely external to petitioner. And also as in Gable, `the source of [petitioner's injury] was a great rush of force or uncontrollable power,' 115 N.J. at 225, 557 A.2d 1012 [at 1018] ... consisting of a sudden and unexpected fall straight down onto a metal sewer pipe." Id. at 279, 670 A.2d at 1116. Additionally, in response to the Board's argument that the source of the supervisor's injury was not "a great rush of force or uncontrollable power" because he fell "only" three and a half feet, we held that "when the cause of an accident is a violent external force rather than a slip and fall, we perceive no reason why the precise distance that an employee may have fallen should be decisive." Id. at 279-80, 670 A.2d at 1116.
In Esposito v. Police and Fireman's Retirement System, 358 N.J.Super. 112, 817 A.2d 340 (App.Div.2003), we held that a knee injury sustained by a police officer from jumping out of the way of an oncoming car while directing traffic resulted from a traumatic event entitling him to accidental disability retirement benefits. We concluded that the source of the injury was the force of the moving motor vehicle which would have hit the officer, and perhaps could have caused him greater injury, had he not jumped out of the way. Id. at 121, 817 A.2d at 346.
In Angiola v. Board of Trustees, Public Employees' Retirement System, 359 N.J.Super. 552, 821 A.2d 98 (App.Div.2003), we held that the disabling injuries of a toll taker who struck the counter of the toll booth when he reacted to an out-of-control, oncoming airborne automobile that landed inches short of the booth, resulted from a traumatic event, entitling him to an accidental disability retirement allowance. We held that the airborne vehicle constituted "a great rush of force or uncontrollable power" precipitating a continuum of a single event, with the last incident being his reflexive reaction and resulting injury. Id. at 560-61, 821 A.2d at 102-03. We concluded that precedent did not require the automobile to actually strike the toll *194 taker but merely provided that the force or power be the source of the injury, stating:
The "steam engine" can stop short, so long as the requisite causal relationship to reactive injury is shown. There is no indication that the Legislature intended exclusion of benefits in a case such as this in which a worker is injured as a result of being exposed to a rush of uncontrolled force, and the worker is unsuccessful in avoiding the consequences of the force.
[Id. at 561, 821 A.2d at 103]
As in Esposito, we determined that the injuries sustained in avoiding the uncontrolled car were "as much the result of a `traumatic event' as they would had been if the [employee's] injuries had resulted from actual contact." Id. at 561-62, 821 A.2d at 103.
We are satisfied the petitioner's accident in the present case constitutes a traumatic event within the Kane test. The Board clearly erred in its interpretation of the statutory term "traumatic event" and its application of that language to the undisputed facts of this case. The Board improperly rejected the factual distinction made by the ALJ from the typical slip and fall cases and his appropriate reliance on Flores. The present case is not a garden-variety slip and fall from level ground on ice with its attendant gravitational forces. Rather, it has the additional factors as recognized by the ALJ. Petitioner did not just slip and fall on her own accord on an icy step and tumble to the ground. Petitioner herself did not bring the forces into motion, unlike someone who merely slips and falls on a waxed or oily floor. Instead, her accident was caused by an unexpected rush of external force or power that she could not control. The origins of the force or power exerted against petitioner came from the patient she was trying to calm and bring to safety.
Petitioner was involved in a continuous traumatic event precipitated by "a great rush of force or uncontrollable power." The patient did not simply let go of petitioner's hand as they were walking on level ground. Rather, as petitioner was proceeding to lead the delirious mental patient from the burning cottage down icy steps, he suddenly jerked his hand out of petitioner's. This action had the same effect as if the patient had pushed petitioner down the stairs. This unexpected action set everything into motion. The movement dramatically changed petitioner's position on the icy step and threw both of them off balance, causing the heavy patient and her to tumble down three steps and land together on the ground. It was this strong, sudden external force exerted upon petitioner, which she was incapable of controlling, that was the source of her unavoidable fall and disabling injury. We emphasize that all of the circumstances must be considered in determining what is a "great rush of force or uncontrollable power." Less force may be required on icy steps than on dry ground.
Reversed.
NOTES
[1] Judge Holston did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] A similar requirement that the disability result from a traumatic event appears in connection with the statutes providing for accidental disability pension benefits under New Jersey's Police and Firemen's Retirement System, N.J.S.A. 43:16A-7, and the Teachers' Pension and Annuity Fund, N.J.S.A. 18A:66-39. Accordingly, precedent construing each of the three statutes is relevant here.
[3] Shea v. TPAF, No. A-3433-98T5 (December 8, 2000), certif. denied, 167 N.J. 632, 772 A.2d 934 (2001), is not precedential, R. 1:36-3. Moreover, it is distinguishable on its facts. In Shea, a teacher who was walking to the front of a line of students felt as if one of them had brushed against her. She took a step on the ice, her feet went out from under her, and she fell, sustaining injuries. The student did not knock her down or cause her to lose her balance. The Board adopted the ALJ's recommendation of denial of accidental disability benefits for failure to satisfy the traumatic event requirement of N.J.S.A. 43:15A-43.