**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2685-16T2

THOMAS LANZA,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Submitted January 14, 2019 – Decided March 5, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. 2-955720.

Lanza Law Firm, LLP, attorneys for appellant (Kenneth W. Thomas, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeff S. Ignatowitz, Deputy Attorney General, on the brief).

PER CURIAM

Thomas Lanza appeals from the February 16, 2017 final agency decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), adopting the initial decision of the administrative law judge (ALJ). The ALJ affirmed the Board's determination that Lanza was ineligible for membership in PERS, effective January 1, 2008, following the adoption of N.J.S.A. 43:15A-7.2.

N.J.S.A. 43:15A-7.2(a) prohibits membership in PERS as of January 1, 2008, for individuals engaged by a municipality under a professional services contract awarded in accordance with the Local Public Contracts Law (LPCL), N.J.S.A. 40A:11-1 to -52. N.J.S.A. 43:15A-7.2(b) imposes the same prohibition on independent contractors performing professional services for a municipality. The Board adopted the ALJ's decision that, in accordance with N.J.S.A. 43:15A-7.2(a) and (b), Lanza was ineligible for membership in PERS for his service as a municipal prosecutor in the Borough of South Plainfield and the Township of Piscataway after December 31, 2007. We affirm.

Lanza is an attorney who was admitted to the New Jersey bar in 1988. He has been in private practice for over twenty-five years and is a partner in the law firm, Lanza & Lanza, LLP. Lanza first enrolled in PERS on January 1, 1994,

when he was appointed as the municipal prosecutor for South Plainfield, and has served continuously since. Lanza also served as the municipal prosecutor in Piscataway continuously since January 1, 2008,[1] and continued PERS participation based on these appointments.

In 2012, the New Jersey Office of the State Comptroller released a report[2] identifying numerous local government entities that failed to comply with N.J.S.A. 43:15A-7.2's prohibition against pension participation by individuals serving in certain government positions pursuant to professional service contracts or as independent contractors. As a result, the Division of Pensions and Benefits (Division), Pension Fraud and Abuse Unit (Unit) commenced an investigation. Based upon information received from South Plainfield and Piscataway, on December 29, 2014, the Unit notified Lanza that the Division determined that he was ineligible for continued participation in PERS after December 31, 2007.

---

[1] Lanza also served as the municipal prosecutor for the Borough of Dunellen and the City of South Amboy. Neither of those appointments is part of this appeal.

[2] State of N.J. Office of the State Comptroller, Investigative Report: Improper Participation by Professional Service Providers in the State Pension System (2012), http://nj.gov/comptroller/news/docs/pensions_report.pdf.

3

Lanza appealed the determination to the Board and on May 26, 2015, the Board agreed and advised Lanza that "[t]here [were] no 'grandfathering' provisions under [N.J.S.A.] 43:15A-7.2 to permit individuals who were already enrolled in . . . PERS to remain as members after January 1, 2008." Lanza again appealed, and the matter was transmitted to the Office of Administrative Law (OAL) for review as a contested case. See N.J.S.A. 52:14F-1 (establishing the OAL for independent review of contested administrative matters); see also N.J.S.A. 52:14B-10 (establishing procedures for review by ALJs).

During the ensuing OAL hearing, conducted on March 30, 2016, Lanza testified on his own behalf, and Marc Seth Greenfield, the Unit investigator who authored the December 29, 2014 letter notifying Lanza of his ineligibility, testified on behalf of the Division. Following the hearing, on December 1, 2016, the ALJ issued an initial decision, affirming the Board's determination. First, the ALJ determined it was "incontrovertible" that Lanza "served as the municipal prosecutor in South Plainfield since 1994[,]" when "[h]e initially enrolled in PERS," and "in Piscataway . . . since 2008." Further, Lanza's "duties include[d] prosecuting criminal matters, zoning complaints, and health department complaints[,]" and he was "responsible for representing the [respective] municipalit[ies] in all phases of the criminal process, to include

discovery, motions, and other pre-trial proceedings." Additionally, Lanza was provided by the municipality with "tools and equipment[,]" including "an office," "a desk," "a computer, " "a phone," and "office supplies." Further, "with the exception of State Police discovery, . . . which [was] mailed by his law office staff[,]" municipal employees "organize[d] and process[ed] discovery for pending prosecutions, using municipal letterhead and envelopes."

The ALJ then posited that "[t]he issue to be decided . . . [was] whether Lanza's service as a municipal prosecutor in both South Plainfield and Piscataway qualifie[d] him for continued membership in PERS . . . under either [N.J.S.A.] 43:15A-7.2(a) or (b)." Regarding N.J.S.A. 43:15A-7.2(a)'s ineligibility for individuals engaged by a municipality under a professional services contract awarded in accordance with the LPCL, as to South Plainfield, the ALJ found "that each year since 2008, South Plainfield issued a public notice soliciting proposals for professional services. Starting in 2012, the notices stated that the services sought, including those of a municipal prosecutor, were not subject to bidding, per [N.J.S.A.] 40A:11-5." In response, "Lanza submitted comprehensive packets of information annually," indicating "that his law firm 'staff [was] very equipped and knowledgeable in dealing with the processing of state's discovery[,] utilizing the internet, scanning of documents[,] and [their]

office just down the street [was] very convenient to meet officers to discuss cases.'"

According to the ALJ, as a result of Lanza's submissions, "from 2008 until the present, and pursuant to [N.J.S.A.] 2B:25-4,[3] Lanza was appointed annually via a formal resolution" generally stating:

> Now therefore be it resolved by the Governing Body of the Borough of South Plainfield as follows:
>
> 1.    The Mayor and Municipal Clerk are hereby authorized to execute agreements with . . . Thomas Lanza, Esq.[]
>
> 2.    This contract is awarded pursuant to a fair and open process in accordance with [N.J.S.A.] 19:44A-20.4 . . . [.]
>
> 3.    Salary for this position is commensurate with the current salary ordinance . . . and health benefit coverage will not be provided as part of the compensation package for the position of Municipal Prosecutor.
>
> 4.    A copy of this resolution shall be published in The Observer as required by law within ten days of its passage.

---

[3]   As pertinent here, N.J.S.A. 2B:25-4 provides for the appointment of a municipal prosecutor "by the governing body of the municipality," N.J.S.A. 2B:25-4(a), who "shall be an attorney-at-law of this State in good standing, . . . shall serve for a term of one year from the date of his or her appointment," N.J.S.A. 2B:25-4(b), and "shall be compensated either on an hourly, per diem, annual or other basis as the . . . municipality . . . provide[s]." N.J.S.A. 2B:25-4(d).  Further, "[a] municipal prosecutor may be appointed to that position in one or more municipal courts." N.J.S.A. 2B:25-4(b).

Similarly, the ALJ found that in Piscataway, Lanza "applied for the position" of municipal prosecutor "by submitting a packet of information" in response "to a request for proposals." Thereafter, Lanza was "designated as the prosecutor annually by the Township Law Director, . . . approved by the governing body[,]" and "appointed . . . via a resolution which confirmed his appointment." According to the ALJ, unlike South Plainfield where "the agreement[s] referenced in the[] resolutions [were] never formally executed by the parties[,]" in Piscataway, "[Lanza] executed a contract with the Township" in "2008" and "2009."[4]

Turning to N.J.S.A. 43:15A-7.2(b)'s ineligibility for independent contractors performing professional services for a municipality, based on Greenfield's testimony, the ALJ found "[t]he Division [made] its determination regarding independent contractor status utilizing the '[Internal Revenue Service's (IRS)] 20-Factor Test[.]'" According to the ALJ, that test "analyzes three aspects of the employment relationship, to include 'Behavioral Control,' 'Financial Control,' and the 'Relationship of the Parties.'" The ALJ recounted that Greenfield's determination "that Lanza was not an employee, but rather, an

---

[4] The ALJ noted that the record did not include contracts or resolutions for the succeeding years.

independent contractor both in South Plainfield and in Piscataway[,]" was based on Greenfield's review of documents supplied by the respective municipalities, including an IRS checklist questionnaire completed by the respective certifying officers. In that regard, Greenfield rejected the assessment of Glenn Cullen, South Plainfield's Chief Financial Officer, that Lanza was an employee of the municipality, and agreed with the assessment of Maria Perez, Piscataway's Assistant Treasurer, that Lanza was working under a professional services contract and was an independent contractor.

In sum, the ALJ credited Greenfield's analysis of the IRS 20-Factor Test as applied to all three aspects of the employment relationship and as corroborated in part by Lanza's own testimony and the documentary evidence. Regarding "Behavioral Control," the ALJ determined the municipality did "not 'have the right to control, supervise[,] or direct' Lanza's work efforts." The ALJ found "Lanza was not hired by an administrator," but rather "was appointed by the governing body[,]" which "ratifie[d] [his appointment] via resolution." Further, although Lanza used "his office staff to assist with [mailing] State Police discovery[,]" Lanza "was hired to perform his prosecutorial duties himself, but could obtain appropriate coverage in the event of an emergency" as "Lanza indicated that municipal prosecutors often help each other out by

swapping sessions." Additionally, although the municipality "direct[ed] his hours insofar as they were tied to the court calendar[,]" municipal employees "[did] not evaluate his work or otherwise give him instructions or directions in terms of how to perform that work" or "account for [his] attendance," and Lanza "prepare[d] no formal reports . . . relative to his duties." Instead, while "overseen by the County Prosecutor," "a municipal prosecutor must have autonomy" and "as Lanza himself stated, he [was] obliged to perform his role with 'discretion, honed by experience, charted by the law[,] and tempered by ethics.'"

Regarding "Financial Control," the ALJ found that Lanza "[was] paid via payroll and receive[d] a W-2[,]" with "state, federal[,] and employee benefit deductions . . . taken from his paycheck[.]" "[H]is salary [was] established by ordinance[,]" and he received "no reimbursement for expenses" and "no fringe benefits[.]" Regarding the "Relationship of the Parties," the ALJ found that "Lanza [was] reappointed annually[,]" "[was] not covered by a union contract[,]" "[was] not associated with another entity that provide[d] services to

the [municipality] via an agreement[,]" and "perform[ed] prosecutorial services for other municipalities."[5]

Turning to the legal analysis, the ALJ detailed N.J.S.A. 43:15A-7.2,[6] explaining that it was enacted in May 2007 to change the pension eligibility

_____

[5] The ALJ also noted that based on the appointing resolution, "[a]rguably neither party could terminate the arrangement at will."

[6] N.J.S.A. 43:15A-7.2 specifically provides in pertinent part:

> a. A person who performs professional services for a political subdivision of this State . . . under a professional services contract awarded in accordance with section [N.J.S.A. 40A:11-5] . . . , on the basis of performance of the contract, shall not be eligible for membership in [PERS]. . . . No renewal, extension, modification, or other agreement or action to continue any professional services contract in effect on [January 1, 2008,] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the contract.
>
> b. A person who performs professional services for a political subdivision of this State . . . shall not be eligible, on the basis of performance of those professional services, for membership in [PERS], if the person meets the definition of independent contractor as set forth in regulation or policy of the [IRS] for the purposes of the Internal Revenue Code. . . .
>
> . . . No renewal, extension, modification, or other agreement or action to continue any such agreement or

10

rules and limit participation in PERS in the aftermath of the issuance of the final report and recommendations of the New Jersey Benefits Review Task Force, created by then Acting Governor Richard Codey, which concluded that:

> [T]he rules that allow the politically well-connected to game the system for their own benefit must be changed. The pension system exists to serve public employees who dedicate their careers to government and the eligibility rule must ensure that only they can participate. When non-deserving individuals are allowed to essentially freeload off the system, everyone loses. The bottom line is the system must be returned to those for whom it was designed.

The Task Force elaborated further:

> Since the principal purpose of any public retirement plan is to provide adequate retirement benefits, such coverage should only be extended to "true" public employees.

---

> contract in effect on [January 1, 2008,] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the agreement or contract.
>
> As used in this subsection, the term "professional services" shall have the meaning set forth in [N.J.S.A. 40A:11-2(6)].

See also N.J.A.C. 17:2-2.3(a)(14) and (15) (codifying these ineligibility standards).

> a) Professional services vendors, such as municipal attorneys, tax assessors, etc., who are retained under public contracts approved by an appointing agency should not be eligible for a pension. In our opinion, these employees simply do not meet the original purpose of the public retirement plan and should not be eligible to participate in any pension plan.
>
> In addition to preserving the integrity of the pension funds for those who had dedicated their lives to public service, this change will also serve as a disincentive to "tacking."[7]

"[M]indful of the intent behind the enactment of [N.J.S.A. 43:15A-7.2]," the ALJ concluded that Lanza "failed to meet his burden" of proving "by a preponderance of the credible evidence" that "he [was] eligible for pension credit after January 1, 2008, for his service as municipal prosecutor" either in South Plainfield or Piscataway. See Charatan v. Bd. of Review, 200 N.J. Super. 74, 78 (App. Div. 1985) (noting that typically, a party claiming to be eligible for a benefit must establish that he meets the qualifying criteria); see also Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 350 (App. Div. 2010) ("[W]hile a person 'eligible for benefits' is entitled to a liberal interpretation of the pension statute, 'eligibility [itself] is not to be liberally permitted.'" (second

---

7 See N.J. Benefits Review Task Force, Report of the Benefit Review Task Force to Acting Governor Richard J. Codey 18 (2005), http://www.state.nj.us/benefitsreview/final_report.pdf.

alteration in original) (quoting Krayniak v. Bd. of Trs., Pub. Emps.' Ret. Sys., 412 N.J. Super. 232, 242 (App. Div. 2010))).

Specifically, the ALJ determined Lanza was "ineligible both because he was retained pursuant to a professional services agreement, and because he [was] an independent contractor as that term [was] defined by law." Regarding the professional services agreement, according to the ALJ, "[t]he services provided by Lanza were incontrovertibly 'professional' in nature" as "[h]e was retained as a municipal prosecutor to utilize his skills and training as an attorney-at-law, and the work he performed . . . assuredly fell under the LPCL['s] definition of 'professional services.'" See N.J.S.A. 40A:11-2(6) (defining "[p]rofessional services" as "services rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law," and "the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training"). Moreover, "[h]e performed those services for a political subdivision of the State, and his appointment was not subject to formal public bidding precisely because it fell under the exception for professional services." See N.J.S.A. 40A:11-5(1)(a)(i) (exempting any contract

13

for "[p]rofessional services" from public bidding and requiring such contracts to "be awarded by resolution of the governing body").

According to the ALJ, "the fact that Lanza and South Plainfield ultimately failed to execute the formal written agreement[s]" referenced in the resolutions did not "detract from the conclusion that he was employed pursuant to a professional services contract" because "[t]he resolution itself constitute[d] a binding agreement between the parties; specifying the term, salary, benefits[,] and responsibilities of the position." See McCurrie v. Town of Kearny, 344 N.J. Super. 470, 480 (App. Div. 2001), rev'd on other grounds, 174 N.J. 523 (2002) ("[I]n the absence of statutory language to the contrary, a local government may enter into a contract by the passage of a resolution."). Thus, the ALJ found that since the resolutions were "passed publicly," and "committed to writing," they met "the spirit and intent of [N.J.S.A.] 40A:11-14," requiring that "[a]ll contracts for . . . goods or services shall be in writing[,]" but leaving to "[t]he governing body" to "prescribe the form and manner in which contracts shall be made and executed[.]"

Turning to Lanza's status as an independent contractor, the ALJ explained:

> The determination whether an individual is an employee or an independent contractor is highly fact sensitive, and requires a careful scrutiny of an individual's employment status. Our courts have

14

confirmed the propriety of utilizing the [IRS] [t]est, as the Board did here. Hemsey v. Bd. of Trs., Police and Firemen's Ret. Sys., 393 [N.J. Super.] 524, 542 (App. Div. 2000)[, rev'd on other grounds, 198 N.J. 215 (2009)]. No single factor outlined in the checklists completed by the municipal authorities is dispositive, and I am required to analyze the totality of the circumstances with the factors as a guide. See [Rev. Rul.] 87-41, 1987-1[ ]C.B. 296.[8] Indeed, some of the areas of inquiry are easily manipulated by the parties; financial control is a case in point. Parties desirous of establishing an employee relationship can readily make payment via a W-2, with all the usual deductions. For this reason, although Lanza surely is compensated as an employee, this is the area of inquiry that I can give the least amount of weight.

The ultimate determination to be made is whether the employer "controls" the worker, which the ruling clarifies, is "not only as to what shall be done but as to how it shall be done." . . . . The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed . . . . The ruling notes that individuals who follow an independent trade, business, or profession, in which they offer their services to the public, generally are not employees. Lawyers are listed as an example.

---

[8]    The IRS twenty-factor test requires consideration of the following: instructions; training; integration; services rendered personally; hiring, supervising, and paying assistants; continuing relationship; set hours of work; full-time required; doing work on employer's premises; order or sequence set; oral or written reports; payment by hour, week, month; payment of business and/or traveling expenses; furnishing of tools and materials; significant investment; realization of profit or loss; working for more than one firm at a time; making service available to general public; right to discharge; and right to terminate. Rev. Rul. 87-41, 1987-1 C.B. at 298-99.

Lanza is appointed annually to provide municipal prosecutor services . . . . He submits a response to a Request for Proposals annually. He is appointed by the public body itself. Lanza must obviously be present when court is in session, but no one . . . otherwise controls his comings and goings. No one formally evaluates him, or tells him how to execute his job substantively. He provides his services . . . on behalf of the public at large . . . . Lanza provides the same services to other municipalities. These factors, in my mind, well outweigh the fact that [the municipality] supplies Lanza with a desk, phone, and computer.

The Board adopted the ALJ's decision and this appeal followed.

On appeal, Lanza argues the Board "failed to meet its burden of proving [he was] not entitled to his pension." Lanza renews his contention that he "should be deemed an[] employee, not an independent contractor[,]" as defined under N.J.S.A. 43:15A-7.2(b), and asserts that in the absence of "any formal written agreement" between himself and South Plainfield since 1994, he does not fall under N.J.S.A. 43:15A-7.2(a)'s requirement for a professional services contract. He contends "a decision denying [him] his pension benefits lacks a basis in law and fact," warranting reversal of the ALJ's decision. We disagree.

"We are mindful of the deference afforded an administrative agency and our limited role in reviewing its decisions, intervening only in rare circumstances where the agency action is arbitrary, capricious, unreasonable or not supported by the evidence in the record." Fairweather v. Pub. Emps.' Ret.

16

Sys., 373 N.J. Super. 288, 294 (App. Div. 2004). In determining whether agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting H.K. v. Div. of Med. Assistance & Health Servs., 379 N.J. Super. 321, 327 (App. Div. 2005)).]

Given the "strong presumption that an agency decision is valid[,]" the party "challenging that decision has a heavy burden of . . . demonstrating that the decision was arbitrary, unreasonable[,] or capricious." In re Tax Credit Application of Pennrose Props., Inc., 346 N.J. Super. 479, 486 (App. Div. 2002).

"[A]lthough we respect the agency's expertise, ultimately, interpretation of statutes is a judicial, not an administrative, function[,] and we are in no way bound by the agency's interpretation." Fairweather, 373 N.J. Super. at 295. Thus, "[l]ike all matters of law, we apply de novo review to an agency's interpretation of a statute." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.,

206 N.J. 14, 27 (2011). To that end, we recognize that "when interpreting a statute," our paramount goal is to ascertain the Legislature's intent, and "generally, the best indicator of that intent" are "the statutory words," to which "[w]e ascribe . . . their ordinary meaning and significance[.]" DiProspero v. Penn, 183 N.J. 477, 492 (2005). We are also aware, however, that in enacting N.J.S.A. 43:15A-7.2 to exclude professional service contractors from membership in PERS, the Legislature sought to curb past abuses, and respond to the Task Force's recommendations to "preserv[e] the integrity of the pension funds for those who have dedicated their lives to public service[.]" N.J. Benefits Review Task Force, Report of the Benefit Review Task Force to Acting Governor Richard J. Codey, at 18. See Joint Legislative Committee, Public Employee Benefits Reform: Final Report 83 (2006), http://www.njleg.state.nj.us/PropertyTaxSession/OPI/jcpe_final_report.pdf.

Pension eligibility itself "is not to be liberally permitted." Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007). "Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (alterations in original) (quoting Chaleff v. Bd.

of Trs., Teachers' Pension & Annuity Fund, 188 N.J. Super. 194, 197 (App. Div. 1983)). "An inappropriate allowance of benefits tends 'to place a greater strain on the financial integrity of the fund in question and its future availability for those persons who are truly eligible for such benefits.'" Francois, 415 N.J. Super. at 350 (quoting Smith, 390 N.J. Super. at 215). Moreover, contrary to Lanza's contention, the burden to establish pension eligibility is properly allocated to the applicant, not the Board. See Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008) (imposing burden on applicant to prove eligibility for disability retirement benefits).

Judged against these standards, we are satisfied that the factual findings by the ALJ are supported by the record, and we agree with the ALJ's legal conclusions, as adopted by the Board, demonstrating that Lanza's appointment as municipal prosecutor met the definition of a "professional services contract," under the LPCL as prescribed by N.J.S.A. 43:15A-7.2(a). Further, Lanza met the definition of independent contractor under the twenty-factor IRS test expressly adopted by N.J.S.A. 43:15A-7.2(b). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result[.]'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training

<u>Ctr.</u>, 127 N.J. 500, 513 (1992)). Accordingly, we reject Lanza's specious argument that he was an employee of the respective municipalities and therefore entitled to PERS participation, and conclude the Board did not err in rendering a contrary determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2685-16T2